# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Case No. 23-15465

CITY OF SPARKS, CHRISTOPHER BARE, CHRISTOPHER ROWE, MATEO TERRASAS, CHARLES COLBORN, NATHAN JANNING, VERNON TAYLOR and AUSTIN GIBSON,

Defendants – Appellants,

vs.

JOSEPH WILLIAMS,

Plaintiffs – Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA
Case No.: 3:22-CV-00197-MMD-CSD

## APPELLANTS' OPENING BRIEF

<table>
<tr><td>WESLEY K. DUNCAN<br>City Attorney<br>Nevada State Bar No.: 12362</td><td>MARIAH NORTHINGTON<br>Senior Assistant City Attorney<br>Nevada State Bar No.: 14247</td></tr>
<tr><td>BARRACK POTTER<br>Senior Assistant City Attorney<br>Nevada State Bar No.: 14105</td><td>P.O. Box 857<br>Sparks, Nevada 89431<br>(775) 353-2324<br>AttyCivilDiv@cityofsparks.us</td></tr>
</table>

Attorneys for Defendants'- Appellants

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................... 1

II. JURISDICTIONAL STATEMENT ...................................................... 3

    A. BASIS FOR THE DISTRICT COURT'S AND THIS COURT'S JURISDICTION ..................................................................... 3

    B. FILING DATES ESTABLISHING TIMELINESS OF APPEAL ..................................................................................... 3

    C. APPEALABILITY OF THE DISTRICT COURT'S ORDER .. 3

        1. Appealability of Denial of Qualified Immunity .............. 3

        2. The Court's Pendent Appellate Jurisdiction over the Intertwined State Law Battery Claim ............................. 4

III. STATEMENT OF ISSUES PRESENTED FOR REVIEW ................. 5

IV. STATEMENT OF THE CASE ........................................................ 5

    A. STATEMENT OF FACTS ............................................... 5

    B. PROCEDURAL HISTORY ............................................ 16

V. SUMMARY OF THE ARGUMENT ................................................ 17

VI. STANDARDS OF REVIEW .......................................................... 18

    A. SUMMARY JUDGMENT STANDARD OF REVIEW ......... 18

    B. QUALIFIED IMMUNITY STANDARD OF REVIEW ......... 19

VII. ARGUMENT ............................................................................. 21

    A. The Officers are entitled to qualified immunity as to the excessive force claim related to the shooting as they did not violate a statutory or constitutional right ................................ 21

    B. Even if this Court finds that the Officers violated a statutory or constitutional right, the Officers are still entitled to qualified immunity as to the excessive force claim because the

unlawfulness of their conduct was not clearly established at the time ................................................................................ 29

C.      The Officers are entitled to qualified immunity as to the excessive force claim related to the 40mm rounds as they did not violate a statutory or constitutional right, and even if they had, the unlawfulness of their conduct was not clearly established at the time .................................................................................. 35

D.      The Officers are entitled to summary judgment as to the related state law battery claim ............................................................. 37

VIII.  CONCLUSION ............................................................................. 38

# TABLE OF AUTHORITIES

## CASES

*Acosta v. City & Cnty. of San Francisco*, 83 F.3d 1143 (9th Cir. 1996)................31

*Adcock v. Chrysler* Corp., 166 F.3d 1290 (9th Cir. 1999).......................................18

*Ames v. King Cnty., Washington*, 846 F.3d 340 (9th Cir. 2017) .............................4

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)....................................... 4, 19

*Baker v. City of SeaTac*, 994 F. Supp. 2d 1148 (W.D. Wash. 2014) ......................21

*Barnard v. Theobald*, 721 F.3d 1069 (9th Cir. 2013)..............................................23

*Brennan v. Las Vegas Metro. Police Dep't*, 2022 WL 990621 (D. Nev. Mar. 31, 2022) ........................................................................................................................38

*Chapman v. Rudd Paint & Varnish Co.,* 409 F.2d 635 (9th Cir. 1969) .................19

*City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500 (2019).....................................31

*City of Tahlequah, Oklahoma v. Bond*, 142 S. Ct. 9 (2021) ....................................21

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)..............................................36

*D.C. v. Wesby*, 138 S. Ct. 577 (2018) ................................................................ 20, 22

*Est. of Martinez v. City of Fed. Way*, 105 F. App'x 897 (9th Cir. 2004).................35

*Gordon v. Las Vegas Metro. Police Dep't*, 2015 WL 5344549 (D. Nev. Sept. 14, 2015) ........................................................................................................................38

*Graham v. Connor*, 490 U.S. 386 (1989) ..................................................... 2, 23, 29

*Gray v. State*, 130 Nev. 1182 (2014) .......................................................................24

*Hobbs v. State*, 127 Nev. 234 (2011) .......................................................................24

*Hughes v. Rodriguez*, 31 F.4th 1211 (9th Cir. 2022).............................................3, 4

*Johnson v. United States*, 576 U.S. 591 (2015) .......................................................30

*Kelley v. State*, 132 Nev. 348 (2016) .......................................................................24

*Kisela v. Hughes*, 138 S. Ct. 1148 (2018)......................................................... 22, 35

*Lowry v. City of San Diego*, 858 F.3d 1248 (9th Cir. 2017).....................................23

*Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992) ............................................21

*Mendez v. City of Scottsdale*, 2014 WL 2569137 (D. Ariz. June 9, 2014)................2

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ..................................................................4

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)........ 37, 39

*Monzon v. City of Murrieta*, 978 F.3d 1150 (9th Cir. 2020) ............................. 34, 38

*Mullenix v. Luna*, 577 U.S. 7 (2015) ........................................................... 2, 21, 30

*Nelson v. State*, 123 Nev. 534 (2007) ......................................................................25

*O'Doan v. Sanford*, 991 F.3d 1027 (9th Cir. 2021)................................... 19, 22, 36

*Orn v. City of Tacoma*, 949 F.3d 1167 ................................................................ 30, 33

*Orr v. Bank of Am.*, NT & SA, 285 F.3d 764 (9th Cir. 2002) .................................19

*Pearson v. Callahan*, 555 U.S. 223 (2009)..............................................................20

*Plumhoff v. Rickard*, 572 U.S. 765 (2014)................................................. 25, 26, 34

*Ramirez v. City of Reno*, 925 F. Supp. 681 (D. Nev. 1996)......................................38
*Rivas-Villegas v. Cortesluna,*142 S. Ct. 4 (2021)........................................ 20, 21, 31
*Rodriguez v. State*, 133 Nev. 905 (2017)........................................................24
*Rosenbaum v. Washoe Cty.*, 663 F.3d 1071 (9th Cir. 2011) ...................................21
*Scott v. Harris*, 550 U.S. 372 (2007) ................................................ passim
*Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110 (9th Cir. 2017)..................... 21, 22
*Swint v. Chambers County Comm'n*, 514 U.S. 35 (1995).......................................5
*Sykes v. United States*, 564 U.S. 1 (2011)......................................................30
*Tennessee v. Garner*, 471 U.S. 1 (1985)..................................................... 1, 24, 35
*Terry v. Ohio*, 88 S.Ct. 1868 (1968) .........................................................23
*Torres v. Madrid*, 141 S. Ct. 989 (2021) .....................................................36
*Tuuamalemalo v. Greene*, 946 F.3d 471 (9th Cir. 2019)......................................38
*United States v. Garcia-Guizar*, 160 F.3d 511 (9th Cir. 1998) ..............................19
*Villanueva v. California*, 986 F.3d 1158 (9th Cir. 2021) .................................. 32, 34
*Voigt v. Savell*, 70 F.3d 1552 (9th Cir. 1995) ..............................................18
*Weiner v. San Diego Cnty.*, 210 F.3d 1025 (9th Cir. 2000)....................................18
*White v. Las Vegas Metro. Police Dep't*, 2021 WL 1109348 (D. Nev. Mar. 22, 2021) ..........................................................................37
*Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010)......................................... 34, 35
*Wong v. United States*, 373 F.3d 952 (9th Cir. 2004)..........................................5

## STATUTES

NRS 193.165(6)(b)..................................................................24
NRS 200.481(2)(a)..................................................................24
NRS 200.481(2)(e)..................................................................24
NRS 484B.550(1)...................................................................25
NRS 484B.550(3)...................................................................25

## RULES

Federal Rule of Appelate Procedure 4(a)(1)(A) ................................................ 3, 18
Federal Rule of Civil Procedure 56(c)...........................................................18

## CONSTITUTIONAL PROVISIONS

28 U.S.C. § 1291.......................................................................3
28 U.S.C. § 1331.......................................................................3
28 U.S.C. § 1343.......................................................................3
28 U.S.C. § 1367.......................................................................3
28 U.S.C. § 2107(a) ...................................................................3
42 U.S.C. § 1983 ................................................................ 3, 19, 38

## I. <u>INTRODUCTION</u>

This is a case where the Plaintiff alleged excessive force after he eluded officers for approximately 42 minutes, drove in a reckless and dangerous manner, hit multiple police vehicles with his vehicle, and was still attempting to elude officers when they shot at him in his vehicle. The United States Supreme Court has held:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, **if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape**, and if, where feasible, some warning has been given.

*Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985). The United States Supreme Court has further held that:

> [W]e are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive so recklessly that they put other people's lives in danger. It is obvious the perverse incentives such a rule would create: Every fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights. **The Constitution assuredly does not impose this invitation to impunity-earned-by-recklessness. Instead, we lay down a more sensible rule: A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment**, even when it places the fleeing motorist at risk of serious injury or death. The car chase that respondent initiated in this case posed a substantial and immediate risk of serious physical injury to

1

> others; no reasonable jury could conclude otherwise. Scott's attempt to terminate the chase by forcing respondent off the road was reasonable, and Scott is entitled to summary judgment.

*Scott v. Harris*, 550 U.S. 372, 385–86 (2007) (emphasis added). The district court below denied qualified immunity even though the Supreme Court has expressly recognized that it "has thus never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity." *Mullenix v. Luna*, 577 U.S. 7, 15 (2015) (emphasis added).

Additionally, even though the entire events were captured on multiple dash cameras and body worn cameras, the district court ignored the videos and instead claimed there were genuine issues of material fact based on the subjective intention of the Plaintiff. "However, Plaintiff's subjective intention is irrelevant." *Mendez v. City of Scottsdale*, 2014 WL 2569137, at *4 (D. Ariz. June 9, 2014) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

Furthermore, the district court erroneously adopted Plaintiff's version of the facts for purposes of denying the motion for summary judgment. *See Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). The district court in this case erred, just like it did in *Scott*, "when it

denied the officer's motion for summary judgment because instead of viewing the facts in the light most favorable to the plaintiff, it should have viewed the facts in the 'light depicted in the videotape.'" *Hughes v. Rodriguez*, 31 F.4th 1211, 1218 (9th Cir. 2022) (quoting *Scott,* 550 U.S. at 381).

## II. JURISDICTIONAL STATEMENT

### A. BASIS FOR THE DISTRICT COURT'S AND THIS COURT'S JURISDICTION

Plaintiff brought this action alleging violations of 42 U.S.C. § 1983, with the related Nevada state law claim of Battery. The District Court and this Court have jurisdiction over this action pursuant to 28 U.S.C. § 1331, § 1343, and § 1367.

### B. FILING DATES ESTABLISHING TIMELINESS OF APPEAL

The District Court's Order was entered on March 24, 2023, wherein the District Court granted in part and denied in part the Motion for Summary Judgment. ER-004-ER-023; ER-091. The Notice of Appeal was timely filed on March 27, 2023, pursuant to 28 U.S.C. § 2107(a) and FRAP 4(a)(1)(A). ER-091; ER-081-ER-084.

### C. APPEALABILITY OF THE DISTRICT COURT'S ORDER

1. Appealability of Denial of Qualified Immunity

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The Supreme Court has recognized that a district court's denial of qualified immunity is "an appealable 'final decision' within the meaning of 28 U.S.C. § 1291." *Mitchell v.*

*Forsyth*, 472 U.S. 511, 530 (1985). This Court "may adjudicate 'legal' interlocutory appeals; that is, we may properly review a denial of qualified immunity where a defendant argues … that the facts, even when considered in the light most favorable to the plaintiff, show no violation of a constitutional right, or no violation of a right that is clearly established in law." *Ames v. King Cnty., Washington*, 846 F.3d 340, 347 (9th Cir. 2017). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) *(*citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248 (1986). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. The district court in this case erred, just like it did in *Scott,* "when it denied the officer's motion for summary judgment because instead of viewing the facts in the light most favorable to the plaintiff, it should have viewed the facts in the 'light depicted in the videotape.'" *Hughes v. Rodriguez*, 31 F.4th 1211, 1218 (9th Cir. 2022) (quoting *Scott,* 550 U.S. at 381).

2. <u>The Court's Pendent Appellate Jurisdiction over the Intertwined State Law Battery Claim</u>

This Court has pendent appellate jurisdiction over the intertwined state law claim. This Court "may exercise pendent appellate jurisdiction over an otherwise

nonappealable ruling if the ruling is inextricably intertwined with a claim properly before us on interlocutory appeal." *Wong v. United States*, 373 F.3d 952, 960 (9th Cir. 2004) (internal citation and quotations omitted). "Two issues are inextricably intertwined if they are (a) [ ] so intertwined that we must decide the pendent issue in order to review the claims properly raised on interlocutory appeal, or (b) resolution of the issue properly raised on interlocutory appeal necessarily resolves the pendent issue." *Id*. (internal citation and quotations omitted); *see also Swint v. Chambers County Comm'n*, 514 U.S. 35, 51 (1995). Here, the state law Battery claim is essentially the state law equivalent to the federal excessive force claims. Thus, the factual and legal analysis required are inextricably intertwined.

III.     <u>**STATEMENT OF ISSUES PRESENTED FOR REVIEW**</u>

Whether the officers are entitled to qualified immunity for using deadly force against a fleeing, violent felon while he was actively attempting to flee while endangering the public and responding law enforcement officers, after hitting multiple police vehicles with his vehicle and continuing to drive in a reckless and dangerous manner.

IV.     <u>**STATEMENT OF THE CASE**</u>

A.     **STATEMENT OF FACTS**

On May 5, 2020, a call was placed via 911 to Sparks Police Department

dispatch.[1] The caller, identified as Jesse Hernandez, called to report a male suspect that had stolen beer from the Arco, located at 1701 Victorian Ave., and also described how the suspect was vandalizing a vehicle in the parking lot. ER-048. Mr. Hernandez described the suspect as wearing a black sweatshirt and red shorts. *Id*. at 1:30-1:44. Mr. Hernandez identified the suspect's vehicle as a grey/black pickup truck. *Id*. at 1:45-2:04. Officers Vernon Taylor and Charles Colborn with Sparks Police Department were dispatched to the Arco. ER-033.

Officer Colborn[2] arrived at the Arco at approximately 12:14 a.m.[3] ER-033; ER-053 at 07:14:00Z. Officer Colborn pulled behind the vehicle, later identified as being owned and operated by Plaintiff, and activated his overhead lights. ER-053 at 07:14:00Z – 07:14:11Z. The suspect's vehicle drove away while Officer Colborn's

---

[1] *See* ER-027-ER-029 (Affidavit of Lisa Rose-Brown); ER-030-ER-047 (Detailed History for Police Event #201260006 (CAD Notes)); ER-048 (Audio recording of the 911 call).

[2] Officer Charles Colborn was wearing a body worn camera and his patrol vehicle was equipped with a dash camera, which recorded the events relevant to Plaintiff's Complaint. *See* ER-049-ER-051 (Affidavit of Officer Colborn); ER-052 (Officer Colborn's Body Worn Camera Video); ER-053 (Officer Colborn's Dash Camera Video).

[3] The officers' body worn camera videos and dash camera videos are time stamped with the Zulu Time Zone, which is approximately seven hours ahead of Pacific Standard Time. *See* https://savvytime.com/converter/z-to-pst. For purposes of this motion, the undersigned will use the Zulu Time to cite portions of the videos for consistency.

vehicle was behind the suspect vehicle while the overhead lights were activated. *Id.* at 07:14:12Z – 07:14:22Z. Officer Colborn began to pursue Plaintiff's vehicle. *Id*. at 07:14:22Z. Officer Colborn activated his siren in addition to his overhead lights while he drove behind Plaintiff; however, Plaintiff failed to submit to Officer Colborn's lights and sirens. *Id.* at 07:14:24Z – 07:14:26Z. Plaintiff continued to flee from Officer Colborn while driving in the middle of two lanes past a citizen driving on the other side of the road. *Id.* at 07:14:27Z – 07:14:44Z.

Plaintiff stopped his vehicle in the middle of the street while officers pursued him and then drove off after a brief period. *Id.* at 07:14:47Z – 07:14:53Z. Plaintiff stopped his vehicle again in the middle of the street while officers pursued him and Officer Taylor believed there was either a gunshot that came from Plaintiff's vehicle or a backfire from Plaintiff's truck, which was articulated over the radio and entered into the CAD Notes for officers to see. *Id*. at 07:15:08Z – 07:15:30Z; ER-034 ("00:16:03 MISC 131 Comment: POSSIBLE BACKFIRE OR GUN SHOT"). Officer Colborn's dash camera video shows an officer driving a patrol vehicle slamming on the brakes during the time there was a loud noise that was believed to either be a gunshot or a backfire from Plaintiff's truck. ER-053 at 07:15:20Z – 07:15:22Z.

While Plaintiff continued to flee from Officers Colborn and Taylor, Plaintiff ran a stop sign. *Id*. at 07:15:25Z – 07:15:30Z. Plaintiff continued to flee from Officers Colborn and Taylor and ran a red light. *Id*. at 07:15:51Z – 07:15:58Z. Plaintiff again

stopped his truck in the middle of the street, waited for officers to exit their patrol vehicles, and drove off again. *Id.* at 07:16:25Z – 07:16:52Z. Plaintiff then ran another red light while fleeing from officers. *Id*. at 07:17:02Z – 07:17:08Z. An emergency communication dispatcher conveyed to officers over the radio that the registered owner of the vehicle was Joseph Williams. *Id*. at 07:1718Z – 07:17:27Z. The emergency communication dispatcher also conveyed to the officers that Williams has a history of battery with a deadly weapon and eluding. *Id*. at 07:17:38 – 07:17:45; ER-034 ("00:17:28 … R/O JOSEPH WILLIAMS … BATTERY W/ DW AND ELUDING").

Plaintiff drove his truck into a dead-end street that was surrounded by a chain-link fence and stopped his truck. ER-053 at 07:18:18Z – 07:18:23Z. Officers exited their patrol vehicles and gave lawful commands to Plaintiff. *Id*. at 07:18:24Z – 07:29:00Z. Plaintiff refused to exit the vehicle and kept trying to have officers approach his vehicle. *Id*. Officers attempted to reason with Plaintiff and have him exit his vehicle; however, Plaintiff failed to comply with the lawful commands to exit his vehicle. *Id*. Plaintiff began yelling at officers, revved the engine on his truck, and drove his vehicle through a chain-link fence to further flee from officers. *Id*. at 07:29:01Z – 07:29:30Z. Officers continued to pursue Plaintiff after he drove through the chain-link fence. *Id*. at 07:29:31Z – 07:31:25Z.

An officer attempted to execute a pursuit intervention technique maneuver (PIT maneuver) on Plaintiff's truck; however, it was unsuccessful in stopping Plaintiff and

Plaintiff continued to flee from officers. *Id*. at 07:31:26Z – 07:31:52Z. Plaintiff continued and ran a red light. *Id*. at 07:32:34Z – 07:32:38Z. Plaintiff continued to flee from officers and ran another red light. *Id*. at 07:35:48Z – 07:35:55Z. Plaintiff continued to flee from officers and ran yet another red light to enter Interstate 80. *Id*. at 07:36:16Z – 07:36:22Z. Plaintiff continued fleeing from officers driving on the freeway and officers set up a plan to lay a spike strip in the road to stop Plaintiff from fleeing. *Id*. at 07:36:23Z – 07:48:36Z. An officer observed and conveyed to other officers that the spike strip was successful related to Plaintiff's front passenger tire. *Id*. at 07:48:37Z – 07:48:52Z. However, Plaintiff continued to flee from officers. *Id*. at 07:48:52Z - 07:53:17Z.

Officers attempted to execute another PIT maneuver on Plaintiff's truck, but Plaintiff exited on the Derby Dam exit, exit 36. *Id*. at 07:53:18Z – 07:53:40Z. Plaintiff then ran multiple stop signs while fleeing from officers. *Id*. at 07:53:41Z – 07:53:53Z. Plaintiff then entered Interstate 80 again while driving on a flat tire and without any lights on. *Id*. at 07:53:54Z – 07:54:23Z. Plaintiff then drove across a freeway lane of travel and briefly drove the wrong direction on the freeway in front of a semi-truck. *Id*. at 07:54:24Z – 07:54:33Z. Plaintiff then continued to drive on the freeway without any lights and on a flat tire. *Id*. at 07:54:34Z – 07:54:44Z. Plaintiff then attempted to hit Officer Colborn's police vehicle with his truck, which was conveyed to other officers via the radio. *Id*. at 07:54:45Z – 07:54:57Z. Plaintiff's front passenger wheel began to

spark while driving on the freeway without any lights. *Id*. at 07:55:04 – 07:55:18Z. An officer advised dispatch "to start rolling fire this way." *Id*. at 07:55:19Z – 07:55:22Z.

Plaintiff continued to drive without any lights on, while he weaved between lanes and sparks emitted from the wheel as he drove the truck on the wheel without a tire. *Id*. at 07:55:23Z - 07:55:31Z. Officer Colborn then communicated with Lt. Rowe regarding executing another PIT maneuver. *Id*. at 07:55:32Z – 07:55:46Z. Lt. Rowe exercised a successful PIT maneuver on Plaintiff's truck, which caused the truck to enter the ditch that separates eastbound and westbound traffic on Interstate 80. *Id*. at 07:55:46Z – 07:56:01Z. Plaintiff then continued to drive his truck and struck the front of Officer Colborn's vehicle while Officer Colborn was still in the vehicle. *Id.* at 07:56:01Z – 07:56:08Z.

Officer Janning's dash camera video[4] captured Plaintiff striking three separate patrol vehicles while he attempted to flee. ER-057 at 07:56:01Z – 07:56:04Z. Officer Janning then positioned his patrol vehicle on the driver's side of Plaintiff's truck and further pushed Plaintiff's truck to stop Plaintiff from fleeing and from continuing to strike the various patrol vehicles. *Id*. at 07:56:04Z – 07:56:10Z. Officer Terrasas' dash

---

[4] Officer Nathan Janning had a dash camera on his patrol vehicle that recorded the events relevant to Plaintiff's Complaint. *See* ER-054-ER-056 (Affidavit of Officer Janning); ER-057 (Officer Janning's Dash Camera Video).

camera video[5] captured the PIT maneuver being executed, Plaintiff subsequently hitting Officer Colborn's vehicle with his truck, and then Plaintiff hitting Officer Terrasas' patrol vehicle with his truck. ER-061 at 07:55:32Z – 07:56:12Z. Sgt. Bare's dash camera video[6] captured Plaintiff's truck hitting Officer Colborn's vehicle and then hitting the front of Sgt. Bare's vehicle. ER-066 at 07:56:01Z – 07:56:08Z. Officer Gibson's dash camera video[7] captured officers boxing Plaintiff's truck in with their patrol vehicles while Plaintiff continued to attempt to flee from officers. ER-071 at 07:56:01Z – 07:56:10Z. Officer Gibson then positioned his patrol vehicle in front of Plaintiff's truck while Plaintiff continued to spin the tires on his truck, which caused dust to kick up off the ground, while the engine revved. *Id*. at 07:56:08Z – 07:56:16Z; ER-057 at 07:56:08Z – 07:56:16Z. After Officer Gibson positioned his patrol vehicle

---

[5] Officer Terrasas was wearing a body worn camera and his patrol vehicle was equipped with a dash camera, which recorded the events relevant to Plaintiff's Complaint. *See* ER-058-ER-060 (Affidavit of Officer Terrasas); ER-061 (Officer Terrasas' Dash Camera Video); ER-062 (Officer Terrasas' Body Worn Camera Video).

[6] Sergeant Christopher Bare was wearing a body worn camera and his vehicle was equipped with a dash camera, which recorded the events relevant to Plaintiff's Complaint. *See* ER-063-065 (Affidavit Sgt. Bare); ER-066 (Sgt. Bare's Dash Camera Video); ER-067 (Sgt. Bare's Body Worn Camera Video).

[7] Officer Austin Gibson was wearing a body worn camera and his patrol vehicle was equipped with a dash camera, which recorded the events relevant to Plaintiff's Complaint. *See* ER-068-ER-070 (Affidavit of Officer Gibson); ER-071 (Officer Gibson's Dash Camera Video); ER-072 (Officer Gibson's Body Worn Camera Video).

in front of Plaintiff's truck, Officer Gibson exited the patrol vehicle, all while Plaintiff attempted to drive his vehicle into Officer Gibson's direction, as evidenced by the fact that Plaintiff's truck was directed at Officer Gibson and the engine was revving. ER-072 at 07:56:08Z – 07:56:12Z.

Officer Taylor[8] pulled up to the scene, exited his patrol vehicle, drew his service pistol, and ran towards Plaintiff's truck. ER-076 at 07:56:08Z – 07:56:13Z. Officer Colburn exited his patrol vehicle and drew his service pistol. ER-052 at 07:56:06Z – 07:56:13Z. Officer Gibson drew his service pistol while outside his vehicle. ER-072 at 07:56:10Z - 07:56:1Z. Officer Terrasas exited his patrol vehicle and drew his service pistol. ER-062 at 07:56:06Z – 07:56:13Z. Officers Colborn, Gibson, Janning, Taylor, and Terrasas then fired at Plaintiff while Plaintiff was still attempting to flee with the truck in Officer Gibson's direction. ER-053 at 07:56:13Z - 07:56:14Z; ER-072 at 07:56:13Z - 07:56:14Z; ER-076 at 07:56:13Z - 07:56:14Z; ER-062 at 07:56:13Z - 07:56:14Z. Officers fired at Plaintiff for approximately 14 seconds while Plaintiff continued to spin his tires with his engine revved. ER-053 at 07:56:13Z - 07:56:27; ER-072 at 07:56:13Z - 07:56:27; ER-076 at 07:56:13Z - 07:56:27; ER-062 at

---

[8] Officer Vernon Taylor was wearing a body worn camera, which recorded the events relevant to Plaintiff's Complaint. *See* ER-073-075 (Affidavit of Officer Taylor); ER-076 (Officer Taylor's Body Worn Camera Video).

07:56:13Z - 07:56:27. Plaintiff continued to rev his engine and spin his tires for almost a minute after officers ceased shooting at Plaintiff, which caused a cloud of dust. ER-053 at 07:56:27Z – 07:57:17Z; ER-072 at 07:56:27Z – 07:57:17Z; ER-076 at 07:56:27Z – 07:57:17Z; ER-062 at 07:56:27Z – 07:57:17Z.

Officers continued to keep their pistols on the vehicle while observing the situation and articulated that Plaintiff was still moving. ER-053 at 07:57:18Z – 07:57:57Z; ER-072 at 07:57:18Z – 07:57:57Z; ER-076 at 07:57:18Z – 07:57:57Z; ER-062 at 07:57:18Z – 07:57:57Z. Lieutenant Rowe[9] exited his vehicle and approached the scene. ER-080 at 07:57:45Z – 07:57:57Z. Lt. Rowe assessed the situation, spoke to officers, and gave the command to reload the pistols if needed. *Id*. at 07:57:58Z – 07:58:27Z. Lt. Rowe went back to his vehicle to call the SWAT truck up to the scene with a shield but was advised the vehicle was down with a flat tire. *Id*. at 07:58:28Z – 07:58:50Z. Lt. Rowe continued to make a tactical plan for officers to safely approach the vehicle with a shield. *Id*. at 07:58:51Z – 07:58:57Z. Lt. Rowe told dispatch to expedite medical to the scene but advised the situation is still ongoing and not safe yet. *Id*. at 07:58:58Z – 07:59:10Z. Lt. Rowe then ordered all east bound traffic on I-80 be

---

[9] Lt. Christopher Rowe was wearing a body worn camera that recorded the events relevant to Plaintiff's Complaint. *See* ER-077-ER-079 (Affidavit of Lt. Rowe); ER-080 (Lt. Rowe's Body Worn Camera Video).

shut down. *Id.* at 07:59:11Z – 07:59:13Z. Lt. Rowe then ordered all west bound traffic on I-80 be shut down. *Id.* at 07:59:51Z – 07:59:59Z.

While Lt. Rowe was giving orders related to traffic on the freeway, Sgt. Bare obtained a shield, approached Plaintiff's vehicle, started to communicate with Plaintiff, and started to give commands to get Plaintiff out of the vehicle. ER-067 at 07:57:45Z – 07:59:59Z. Sgt. Bare then advised dispatch that Plaintiff is now compliant by showing his hands and was advised by dispatch that medical was expedited. *Id.* at 08:00:00Z – 08:00:20Z. Sgt. Bare communicated with Plaintiff in an attempt to get him out of the vehicle and was informed by Plaintiff that he cannot get the window down because it is broken. *Id.* at 08:00:30Z – 08:01:29Z. Sgt. Bare then communicated with Lt. Rowe to come up with a plan to safely get Plaintiff out of the vehicle and decided to get a 40mm launcher that fires a foam less-than-lethal round to break the truck's rear window so that Plaintiff could climb out of the vehicle through the back window. *Id.* at 08:01:30Z – 08:01:45Z. Sgt. Bare communicated the plan to the officers, obtained the 40mm launcher with a foam round, and assisted officers in attempting to break out the back window with the foam round so that Plaintiff could safely exit the truck. *Id.* at 08:01:46Z – 08:05:15Z. Unfortunately, the window did not break, and Plaintiff informed the officers that the window will not break because it is plexiglass. *Id.* at 08:05:16Z – 08:05:28Z. Sgt. Bare again communicated with Plaintiff in an attempt to get Plaintiff out of the vehicle and was informed the passenger door most likely would

open. *Id*. 08:05:29Z – 08:06:51Z. Sgt. Bare discussed the plan to move the police vehicle away from Plaintiff's passenger door with Lt. Rowe and was given authority to proceed with the plan. *Id*. at 08:06:52Z – 08:07:25Z. Sgt. Bare then communicated the plan with Plaintiff and advised him to keep his hands up at all times. *Id*. at 08:07:26Z – 08:08:09Z.

An officer then moved the patrol vehicle away from Plaintiff's passenger door so that Plaintiff could exit the vehicle through the passenger door. *Id*. at 08:08:58Z – 08:09:06Z. Plaintiff was instructed to move over to the passenger door, open the door, get out of the vehicle, and lay down. *Id*. at 08:09:06Z – 08:09:48Z. Plaintiff then opened the door, asked the officers to give him a second, argued with officers, refused to comply with the command to lay down, and finally laid on the ground so that officers could detain him with handcuffs. *Id*. at 08:09:48Z – 08:11:02Z. Officers approached, and Officer Colborn placed Plaintiff into handcuffs. *Id*. at 08:11:02Z – 08:11:30Z; ER-052 at 08:11:02Z – 08:11:30Z. Lt. Rowe then advised that Plaintiff was in custody and ordered dispatch to expedite medics. ER-067 at 08:11:31Z – 08:11:35Z; ER-080 at 08:11:31Z – 08:11:35Z.

Officer Colborn verified the handcuffs were on and helped Plaintiff sit up. ER-052 at 08:11:30Z – 08:12:03. Officers stated their intent to cut off Plaintiff's clothes for a medical assessment and Officer Colborn asked Plaintiff where he was hit. *Id*. at 08:12:03 – 08:12:08Z. Officer Colborn then started cutting off Plaintiff's clothes. *Id*.

at 08:12:08Z – 08:13:03Z. While Officer Colborn was cutting off Plaintiff's clothes, Lt. Rowe advised officers that they needed to check him for wounds, perform emergency trauma right there, and then transport Plaintiff to the ambulance. ER-080 at 08:13:03Z – 08:13:16Z. Lt. Rowe assisted in assessing Plaintiff's injuries and gave directions to officers giving medical care. *Id*. at 08:13:17Z – 08:15:24Z. While officers provided medical care to Plaintiff, Lt. Rowe returned to his vehicle and discussed the transport plan with dispatch. *Id*. at 08:15:25Z – 08:16:25Z.

While officers were providing medical treatment to Plaintiff, an ambulance arrived on scene to transport Plaintiff to the hospital. *Id*. at 08:17:10Z – 08:17:46Z. Lt. Rowe advised the medical personnel with North Lyon County Fire Department of Plaintiff's status and the care that has been provided to Plaintiff thus far. *Id*. at 08:17:47Z – 08:17:03Z. Lt. Rowe then verified the medical personnel were with North Lyon County. *Id*. at 08:17:03Z – 08:17:05Z. Plaintiff is then loaded into the North Lyon County Fire Department's ambulance. ER-066 at 08:24:09Z – 08:36:10Z. The ambulance driver then entered the vehicle and the ambulance left to the scene to the hospital. *Id*. at 08:36:11Z – 08:37:50Z.

## B. PROCEDURAL HISTORY

This case was filed on May 2, 2022. ER-087. On July 26, 2022, the Officers filed a motion to dismiss as to duplicative *Monell* claims. ER-088. On August 4, 2022, the Officers filed a motion for summary judgment. ER-089. Additionally, on

August 4, 2022, the Officers filed a motion to stay discovery. *Id*. The parties filed the appropriate oppositions and replies to the filed motions. ER-088-ER-091. A hearing was held on the motion to stay discovery on September 7, 2022. ER-091. The motion to stay discovery was granted on September 8, 2022. *Id*. On March 24, 2023, the district court granted the motion for summary judgment as to Plaintiff's negligence claim and denied summary judgment as to the remaining claims. *Id*. Additionally, on March 24, 2023, the district court granted the motion to dismiss as to the *Monell* claims with leave to amend. *Id*. Appellants' notice of appeal was filed on March 27, 2023. *Id*.; ER-081-084. The district court entered a minute order staying the case pending appeal. ER-091.

## V.        <u>SUMMARY OF THE ARGUMENT</u>

The Officers are entitled to qualified immunity as to the excessive force claim for using deadly force against a violent, fleeing felon that was further attempting to flee after hitting multiple police vehicles with his vehicle and eluding officers for approximately 42 minutes.  The Officers did not violate a statutory or constitutional right. However, even if the Officers did violate a statutory or constitutional right, any unlawfulness of their conduct was not clearly established at the time.  Given that the constitutional excessive force claim fails, so do any municipal liability claims. Additionally, the related battery claim fails because Williams cannot show that the officers used unreasonable force.

17

## VI.  **STANDARDS OF REVIEW**

### A.  **SUMMARY JUDGMENT STANDARD OF REVIEW**

A district court's decision to grant summary judgment is reviewed de novo. *Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1028 (9th Cir. 2000). In conducting a de novo review, this Court does not defer to the lower court's ruling but independently reconsiders the matter as if no decision had been rendered below. *Voigt v. Savell*, 70 F.3d 1552, 1564 (9th Cir. 1995). This Court's "review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c)." *Adcock v. Chrysler* Corp., 166 F.3d 1290, 1292 (9th Cir. 1999).

Rule 56(a) of the Federal Rules of Civil Procedure provides the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment [and f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A trial court can only consider admissible evidence in ruling on a motion for summary judgment. *Orr v. Bank of Am.*, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). To defeat summary judgment, the adverse party must rely upon actual evidence, not mere allegations or arguments by an attorney. *Chapman v. Rudd Paint & Varnish Co.,* 409 F.2d 635, 643 (9th Cir. 1969); *United States v. Garcia-*

*Guizar*, 160 F.3d 511, 522 (9th Cir. 1998). The United States Supreme Court has held that videos of the event can speak for themselves. *See Scott v. Harris*, 550 U.S. 372, 378 & n.5 (2007) ("We are happy to allow the videotape to speak for itself."). "In the absence of material factual disputes, the objective reasonableness of a police officer's conduct is a pure question of law." *O'Doan v. Sanford*, 991 F.3d 1027, 1035 (9th Cir. 2021) (citations and quotation marks omitted).

## B.   QUALIFIED IMMUNITY STANDARD OF REVIEW

"Officers sued under 42 U.S.C. § 1983 may be immune from civil liability under the doctrine of qualified immunity." *O'Doan*, 991 F.3d at 1035–36. To determine whether the officers are entitled to qualified immunity, "we consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Id*. (internal citation omitted). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right…[i]n other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. (internal citation omitted). "The precedent must be clear enough that ***every reasonable official*** would interpret it to establish the ***particular rule*** the plaintiff seeks to apply." *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (emphasis added).

Although qualified immunity involves a two-step analysis, courts may exercise their discretion to resolve a case only on the second ground when no clearly established law shows the officers' conduct was unconstitutional. *Id*. "[T]o show a violation of clearly established law, [the plaintiff] must identify a case that put [the officer] on notice that his specific conduct was unlawful," and this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Rivas-Villegas v. Cortesluna,* 142 S. Ct. 4, 8 (2021) (internal citations omitted).

"Qualified immunity 'balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Id*. (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "The linchpin of qualified immunity is the reasonableness of the official's conduct." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1075 (9th Cir. 2011). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Baker v. City of SeaTac*, 994 F. Supp. 2d 1148, 1167 (W.D. Wash. 2014) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)).

"It is the plaintiff who bears the burden of showing that the rights allegedly violated were clearly established." *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (internal quotation marks and citation omitted). A plaintiff must

provide a case that demonstrates the unconstitutionality of the action in light of the specific context of the case, and failure to do so requires a grant of qualified immunity. *Id*.; *see also Mullenix v. Luna*, 577 U.S. 7, 12 (2015); *Cortesluna,* 142 S. Ct. at 8; *City of Tahlequah, Oklahoma v. Bond*, 142 S. Ct. 9, 11 (2021).

## VII.   <u>**ARGUMENT**</u>

  **A.**   **The Officers are entitled to qualified immunity as to the excessive force claim related to the shooting as they did not violate a statutory or constitutional right**

The United States Supreme Court has extensively set out the standard for qualified immunity:

> Under our precedents, officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time. Clearly established means that, at the time of the officer's conduct, the law was that every reasonable official would understand that what he is doing is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate. This demanding standard protects all but the plainly incompetent or those who knowingly violate the law. To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know.

*D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018) (cleaned up).

"Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153, 200 L. Ed. 2d 449 (2018) (cleaned up). This Court has stressed its task when deciding the issue of qualified immunity "is not to serve as a police oversight board or to second-guess officers' real-time decisions from the standpoint of perfect hindsight, but to ask whether the officers violated clearly established law." *O'Doan v. Sanford*, 991 F.3d 1027, 1036 (9th Cir. 2021). "The question, then, is whether clearly established law prohibited [the officers] from using the degree of force that [they] did in the specific circumstances that the officers confronted." *Id*. at 1037. "It is the plaintiff who bears the burden of showing that the rights allegedly violated were clearly established." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (citation and quotation marks omitted)).

The Fourth Amendment does not prohibit a police officer's use of reasonable force during an arrest, it prohibits the use of excessive force. *See Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989) ("the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it") (citing *Terry v. Ohio*, 88 S.Ct. 1868 (1968). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

*Graham*, 490 U.S. at 396. "[P]olice officers who confront actual (or perceived) resistance are only permitted to use an amount of force that is reasonable to overcome that resistance." *Barnard v. Theobald*, 721 F.3d 1069, 1076 (9th Cir. 2013). Some of the factors that are considered when deciding if there was excessive force are: "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Lowry v. City of San Diego*, 858 F.3d 1248 (9th Cir. 2017). Furthermore, the United States Supreme Court has held:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, **if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape**, and if, where feasible, some warning has been given.

*Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985).

Nevada law defines battery as "any willful and unlawful use of force or violence upon the person of another." NRS 200.481(1)(a). "[B]attery is the intentional and unwanted exertion of force upon another, however slight." *Hobbs v. State*, 127 Nev. 234, 239, 251 P.3d 177, 180 (2011). "Absent aggravating factors, battery is a misdemeanor, NRS 200.481(2)(a), but it becomes a category B felony if the batterer used a 'deadly weapon,' NRS 200.481(2)(e)." *Rodriguez v. State*, 133 Nev. 905, 907,

407 P.3d 771, 773 (2017). Deadly weapon means "Any weapon, device, instrument, material or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing substantial bodily harm or death[.] NRS 193.165(6)(b). "[T]he Legislature intended 'deadly weapon' within NRS 200.481(2)(e) to be interpreted broadly, according to both the functional definition and the inherently dangerous definition." *Rodriguez*, 133 Nev. at 909, 407 P.3d at 774. The Nevada Supreme Court affirmed a conviction for battery with a deadly weapon when the defendant "intentionally struck the officer with his vehicle" and held "there was sufficient evidence that [defendant] used his vehicle as a deadly weapon." *Gray v. State*, 130 Nev. 1182 (2014).

"NRS 484B.550 governs the offense of felony eluding." *Kelley v. State*, 132 Nev. 348, 350, 371 P.3d 1052, 1054 (2016). The crime of eluding occurs when:

> the driver of a motor vehicle on a highway or premises to which the public has access who willfully fails or refuses to bring the vehicle to a stop, or who otherwise flees or attempts to elude a peace officer in a readily identifiable vehicle of any police department or regulatory agency, when given a signal to bring the vehicle to a stop is guilty of a misdemeanor.

NRS 484B.550(1). However, when "the driver of the motor vehicle: (a) Is the proximate cause of damage to the property of any other person; or (b) Operates the motor vehicle in a manner which endangers or is likely to endanger any other person

24

or the property of any other person, the driver is guilty of a category B felony[.]" NRS 484B.550(3); *Nelson v. State*, 123 Nev. 534, 540, 170 P.3d 517, 521 (2007).

The United Supreme Court analyzed a similar case to the facts of this case in *Plumhoff v. Rickard*, 572 U.S. 765 (2014). Rickard was pulled over for a minor traffic violation and asked to step out of the car; however, instead of stepping out of the car, Rickard sped away. *Id.* at 769. Officers gave chase and attempted to use tactics to stop the chase. *Id*. Rickard eventually exited the freeway, hit an officer's cruiser, and collided with another officer's cruiser. *Id*. "Now in danger of being cornered, Rickard put his car into reverse in an attempt to escape." *Id*. As he did so, officers got out of their cruisers and approached Rickard's car with a service pistol drawn. *Id*. at 770. "Rickard's tires started spinning, and his car was rocking back and forth, indicating that Rickard was using the accelerator even though his bumper was flush against a police cruiser." *Id.* (cleaned up). An officer then fired three shots at Rickard's car. *Id*. "Rickard then reversed in a 180 degree arc and maneuvered onto another street, forcing [an officer] to step to his right to avoid the vehicle." *Id.* (cleaned up). "As Rickard continued fleeing down that street, [officers] fired 12 shots toward Rickard's car, bringing the total number of shots fired during this incident to 15." *Id.* (cleaned up). "Rickard then lost control of the car and crashed into a building." *Id.* "Rickard and [his passenger] both died from some combination of gunshot wounds and injuries suffered in the crash that ended the chase." *Id.*

Based on those facts, the United States Supreme Court held that "In light of the circumstances we have discussed, it is beyond serious dispute that Rickard's flight posed a grave public safety risk, and here, as in *Scott*, **the police acted reasonably in using deadly force to end that risk**." *Id*. at 777 (emphasis added). The Supreme Court also considered the "respondent's contention that, even if the use of deadly force was permissible, petitioners acted unreasonably in firing a total of 15 shots." *Id*. In response, the Court specifically stated, "We reject that argument. It stands to reason that, **if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended.**" *Id.* (emphasis added). The Court held "that the Fourth Amendment did not prohibit petitioners from using the deadly force that they employed to terminate the dangerous car chase that Rickard precipitated." *Id*. at 781.

Additionally, the United States Supreme Court addressed another case where the officer used deadly force to attempt to terminate a chase. *Scott v. Harris*, 550 U.S. 372 (2007). The United States Supreme Court specifically stated that:

> [W]e are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive so recklessly that they put other people's lives in danger. It is obvious the perverse incentives such a rule would create: Every fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights. **The Constitution assuredly does not impose this invitation to impunity-earned-by-recklessness. Instead, we lay down a more sensible rule: A police**

> **officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment**, even when it places the fleeing motorist at risk of serious injury or death. The car chase that respondent initiated in this case posed a substantial and immediate risk of serious physical injury to others; no reasonable jury could conclude otherwise. Scott's attempt to terminate the chase by forcing respondent off the road was reasonable, and Scott is entitled to summary judgment.

*Id*. at 385–86 (emphasis added). The Court held that the "car chase that respondent initiated in this case posed a substantial and immediate risk of serious physical injury to others; no reasonable jury could conclude otherwise." *Id*. at 386.

In this case, the entire pursuit from the initial contact at the Arco until the time of the shooting lasted approximately 42 minutes. ER-052 at 07:14:20Z – 07:56:13Z. Plaintiff fled from Officer Colborn while driving in the middle of two lanes past a citizen driving on the other side of the road. *Id*. at 07:14:27Z – 07:14:44Z. Plaintiff attempted to hit Officer Colborn's police vehicle with his truck during the pursuit on the freeway. *Id*. at 07:54:45Z – 07:54:57Z. Plaintiff drove across a freeway lane of travel and briefly drove the wrong direction on the freeway in front of a semi-truck while officers were pursuing him with their lights and sirens activated. *Id*. at 07:54:24Z – 07:54:33Z. After Lt. Rowe conducted a PIT maneuver, Plaintiff then continued to drive his truck and hit three separate police vehicles while the officers were still inside the vehicles. ER-053 at 07:56:01Z – 07:56:08Z; ER-057 at 07:56:01Z – 07:56:04Z; ER-061 at 07:56:01Z – 07:56:12Z; ER-066 at 07:56:01Z – 07:56:07Z; ER-071 at

07:56:01Z – 07:56:011Z. Plaintiff then tried to drive into Officer Gibson's vehicle and towards Officer Gibson when he was outside the vehicle. ER-071 at 07:56:07Z – 07:56:15Z; ER-072 at 07:56:11Z - 07:56:18Z. Plaintiff continued to attempt to drive his truck over Officer Gibson's vehicle and towards officers even after the officers shot at him. ER-071 at 07:56:07Z – 07:56:40Z; ER-072 at 07:56:11Z - 07:56:41Z. Officers fired at Plaintiff for approximately 14 seconds while Plaintiff continued to spin his tires with his engine revved. ER-53 at 07:56:13Z - 07:56:27; ER-072 at 07:56:13Z - 07:56:27; ER-076 at 07:56:13Z - 07:56:27; ER-062 at 07:56:13Z - 07:56:27. Plaintiff continued to rev his engine and spin his tires for almost a minute after officers ceased shooting at Plaintiff, which caused a cloud of dust. ER-53 at 07:56:27Z – 07:57:17Z; ER-072 at 07:56:27Z – 07:57:17Z; ER-076 at 07:56:27Z – 07:57:17Z; ER-062 at 07:56:27Z – 07:57:17Z.

All of the *Graham* factors weigh against Plaintiff. The crimes at issue were severe as they were violent and dangerous, the suspect posed an immediate threat to the safety of the officers and the general public, and the suspect was actively resisting arrest and attempting to evade arrest by flight. Further, as Plaintiff threatened the officer with a weapon – his truck – and there was probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm as he hit multiple officers' vehicles while they were in the vehicles, Defendants were justified in using deadly force to prevent escape. The fact that officers shot at him

28

multiple times while he was actively attempting to run over an officer and flee does not make the officers' use of deadly force excessive. Thus, Defendants are entitled to qualified immunity as a matter of law and the district court must be reversed.

B. **Even if this Court finds that the Officers violated a statutory or constitutional right, the Officers are still entitled to qualified immunity as to the excessive force claim because the unlawfulness of their conduct was not clearly established at the time**

Even if this Court disagrees and finds that Defendants violated a federal statutory or constitutional right, the officers are entitled to qualified immunity as the unlawfulness of their conduct was not clearly established. **"The Court has thus never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity."** *Mullenix v. Luna*, 577 U.S. 7, 15 (2015) (emphasis added). The United States Supreme Court further stated, "qualified immunity protects actions in the hazy border between excessive and acceptable force." Id. at 18 (citation and quotation marks omitted). The Supreme Court has recognized that "[e]ven if the criminal attempting to elude capture drives without going at full speed or going the wrong way, he creates the possibility that police will, in a legitimate and lawful manner, exceed or almost match his speed or use force to bring him within their custody." *Sykes v. United States*, 564 U.S. 1, 9 (2011), *overruled on other ground by Johnson v. United States*, 576 U.S. 591 (2015). Justice Thomas recognized "vehicular flight … always triggers a dangerous confrontation[.]" *Johnson*, 576 U.S. at 609 (Thomas,

J., concurring in judgment).

The district court relied solely on this Court's case law to deny the officers qualified immunity; however, the Supreme Court's case law seems to question this practice.[10] The district court relied on *Orn v. City of Tacoma*, 949 F.3d 1167 and *Acosta v. City & Cnty. of San Francisco*, 83 F.3d 1143 (9th Cir. 1996), to deny the officers qualified immunity. However, even assuming that controlling Circuit precedent clearly establishes law for purposes of § 1983, the district court's reliance on *Orn* and *Acosta* was erroneous. *Acosta* does not put the constitutional question

---

[10] *See City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 614 (2015) ("But even if a controlling circuit precedent could constitute clearly established federal law in these circumstances") (quotation marks and citation omitted); *Carroll v. Carman*, 574 U.S. 13, 17 (2014) ("Assuming for the sake of argument that a controlling circuit precedent could constitute clearly established federal law in these circumstances") (citation omitted); *Kisela v. Hughes*, 138 S. Ct. 1148, 1153, 200 L. Ed. 2d 449 (2018) ("To begin with, even if a controlling circuit precedent could constitute clearly established law in these circumstances, it does not do so here.") (quotation marks and citation omitted); *Reichle v. Howards*, 566 U.S. 658, 665–66 (2012) ("Assuming arguendo that controlling Court of Appeals' authority could be a dispositive source of clearly established law in the circumstances of this case"); *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7, 211 L. Ed. 2d 164 (2021) ("Even assuming that controlling Circuit precedent clearly establishes law for purposes of § 1983"); *Taylor v. Barkes*, 575 U.S. 822, 826 (2015) ("Assuming for the sake of argument that a right can be 'clearly established' by circuit precedent despite disagreement in the courts of appeals"); *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503, 202 L. Ed. 2d 455 (2019) ("Assuming without deciding that a court of appeals decision may constitute clearly established law for purposes of qualified immunity").

beyond debate.

> In *Acosta*, an off-duty, plainclothes police officer chased on foot two men he believed had stolen a purse. The men got into a waiting, stopped car driven by Michael Acosta. The officer, still in pursuit, positioned himself near the front of the car, standing closer to the side than dead-center. The vehicle then began moving or rolling very slowly from a standstill toward the officer. The officer fired two shots into the car, killing Acosta. We held that the officer violated the Fourth Amendment and was not entitled to qualified immunity because a reasonable officer could not have reasonably believed that shooting at the driver of the slowly moving car was lawful, as he would have recognized that he could avoid being injured when the car moved slowly by simply stepping to the side.

*Villanueva v. California*, 986 F.3d 1158, 1171 (9th Cir. 2021) (cleaned up). In this case, Plaintiff's vehicle was not beginning to move or roll slowly towards the officers. Plaintiff's vehicle had just hit multiple officers' vehicles and the engine was revved with the tires spinning.[11] Additionally, Acosta had not fled from police for

---

[11] The district court's attempt to deny qualified immunity by relying on Williams' version of the event that "he did not attempt to flee after the Officers immobilized him" is contrary to the evidence. ER-019. The district court claims that "[c]ontrary to Defendants' version of events, the Officers' body cam and dash cam recordings do not clearly show that Williams was either turning or attempting to accelerate in Gibson's direction, spinning his tires, or even moving the truck at all." ER-015. The district court cited to multiple videos to support its assertion that the officers misrepresented the facts; however, missing from the citations is the video that the officers relied upon to show that the tires were spinning. *See* ER-057 at 07:56:06Z – 07:57:21Z (clearly showing Williams' tire spinning so fast the letters on his tire cannot be read until the tire stops spinning).

approximately 42 minutes, hit multiple police vehicles, drove on the wrong side of the freeway in front of a semi-truck, drove on a freeway with only three tires and a wheel sparking because the tire was completely gone, and continued to have the engine revved with the tires spinning while the truck was in close proximity to and facing a police officer. Thus, the attempt to rely on *Acosta* is misplaced and cannot be used to deny Defendants qualified immunity.

In *Orn*, the Court recognized that Orn was driving very slowly (approximately five miles per hour) as he attempted to maneuver around an officer's car while fleeing from police. *Orn*, 949 F.3d at 1173. Orn's vehicle hit multiple officers' vehicles, but one of the officers described it as a "glancing blow." *Id*. Officers then began firing at Orn. *Id*. The *Orn* Court found that "Orn was driving at a slow speed in a non-reckless manner as he maneuvered around [an officer's] SUV, and although his vehicle clipped [that officer's] SUV and [another officer's] patrol car as he maneuvered between them, the contact was slight and clearly accidental." *Id*. at 1176. The *Orn* Court recognized that "to warrant the use of deadly force, a motorist's prior interactions with police must have demonstrated that he either was willing to injure an officer that got in the way of escape or was willing to persist in extremely reckless behavior that threatened the lives of all those around." *Id*. at 1177 (quotation marks and citation omitted). The *Orn* Court found that Orn:

> never targeted officers with his vehicle or forced other
> vehicles off the road[,] he traveled at normal speeds and

> stopped at traffic lights and stop signs throughout the pursuit[, and] the Tacoma Police Department's Pursuit Review Committee conducted a review of the pursuit and classified it as involving only a Failure to Yield, which occurs when a driver fails or refuses to immediately bring his or her vehicle to a stop, and drives in a manner that is not reckless and does not pose an immediate threat to community safety.

*Id.* (quotation marks and citations omitted).

Clearly, none of those facts are similar to this case. Additionally, this Court has "found use of deadly force against a stopped or slow-moving vehicle reasonable only when the driver was trying to evade arrest in an aggressive manner involving attempted or actual acceleration of the vehicle." *Villanueva v. California*, 986 F.3d 1158, 1170 (9th Cir. 2021) (citing *Monzon v. City of Murrieta*, 978 F.3d 1150, 1161 (9th Cir. 2020); *Wilkinson v. Torres*, 610 F.3d 546, 551–53 (9th Cir. 2010)). By Plaintiff hitting multiple police vehicles while eluding and attempting to accelerate his vehicle towards officers who outside their vehicles within close proximately of Plaintiff's vehicle, the officers' shooting Plaintiff was clearly reasonable based on this Court's caselaw or at the very least, was not beyond debate as to put the officers on notice as to the clear unlawfulness of their conduct. Therefore, the attempt to rely on *Orn* is misplaced and cannot be used to deny Defendants qualified immunity.

The district court recognized, while citing to *Plumhoff*, 572 U.S. 776-77, that "[i]f Williams had attempted to accelerate and drive off in Gibson's direction as Defendants described—evidenced in part by spinning tires and the relative positions

of Williams, Williams's truck, and Gibson—right before the Officers fired, it would have been reasonable for them to use deadly force to prevent harm to Gibson or others." ER-015. In denying summary judgment, the district court erroneously "assume[d] that Williams's truck was immobile and incapable of further flight, did not have its tires spinning, and was neither turning nor accelerating toward Gibson when the Officers opened fire, and also infers that the noise coming from the truck's engine was not a result of Williams trying to accelerate." ER-016. However, the district court "should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape." *Scott*, 550 U.S. at 380–81.

The Supreme Court has recognized that if a "suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." *Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985). "Verbal warnings are not feasible when lives are in immediate danger and every second matters." *Est. of Martinez v. City of Fed. Way*, 105 F. App'x 897, 899 (9th Cir. 2004). The tires on Plaintiff's truck "could have gained traction at any time, resulting in a sudden acceleration in speed." *Wilkinson v. Torres*, 610 F.3d 546, 552 (9th Cir. 2010). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified

immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153, 200 L. Ed. 2d 449 (2018) (cleaned up). The Ninth Circuit has stressed the courts' task when deciding the issue of qualified immunity "is not to serve as a police oversight board or to second-guess officers' real-time decisions from the standpoint of perfect hindsight, but to ask whether the officers violated clearly established law." *O'Doan v. Sanford*, 991 F.3d 1027, 1036 (9th Cir. 2021). "The question, then, is whether clearly established law prohibited [Defendants] from using the degree of force that [they] did in the specific circumstances that the officers confronted." *Id*. at 1037. Based on the videos that captured the events and the totality of the circumstances, the Officers are entitled qualified immunity and the district court's decision must be reversed.

**C. The Officers are entitled to qualified immunity as to the excessive force claim related to the 40mm rounds as they did not violate a statutory or constitutional right, and even if they had, the unlawfulness of their conduct was not clearly established at the time**

The district court declined to reach the officers' excessive force argument concerning the officers' use of the 40-millimeter less-lethal foam launcher to break Williams's truck window after using deadly force. ER-017. However, as the district court denied qualified immunity, this issue is properly before this Court. Williams' claim of excessive force related to the 40-millimer less-lethal foam round is without merit as "[a] seizure requires the use of force with intent to restrain [and a]ccidental

force will not qualify." *Torres v. Madrid*, 141 S. Ct. 989, 998, 209 L. Ed. 2d 190 (2021) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998)).

Here, Sgt. Bare communicated with Williams in an attempt to get him out of the vehicle and was informed by Williams that he cannot get the window down because it is broken. ER-067 at 08:00:30Z – 08:01:29Z. Sgt. Bare then communicated with Lt. Rowe to come up with a plan to safely get Williams out of the vehicle and decided to get a 40mm launcher that fires a foam less-than-lethal round to break the truck's rear window so that Williams could climb out of the vehicle through the back window. *Id.* at 08:01:30Z – 08:01:45Z. Sgt. Bare communicated the plan to the officers, obtained the 40mm launcher with a foam round, and assisted officers in attempting to break out the back window with the foam round so that Williams could safely exit the truck. *Id.* at 08:01:46Z – 08:05:15Z. Unfortunately, the window did not break, and Plaintiff informed the officers that the window will not break because it is plexiglass. *Id.* at 08:05:16Z – 08:05:28Z. Based on the videos and Williams' failure to produce any evidence that officers were attempting to hit him with the 40 mm foam round, the officers are entitled to qualified immunity. Additionally, Williams cannot meet his burden to provide a case that puts this issue beyond debate. Thus, the officers are entitled to

qualified immunity.[12]

**D. The Officers are entitled to summary judgment as to the related state law battery claim**

"[T]he standard for battery by a police officer under Nevada law is the same as under a § 1983 claim." *Gordon v. Las Vegas Metro. Police Dep't*, 2015 WL 5344549, at *11 (D. Nev. Sept. 14, 2015); *see also Brennan v. Las Vegas Metro. Police Dep't*, 2022 WL 990621, at *8 (D. Nev. Mar. 31, 2022) ("This district has long recognized that the standard for battery by a police officer under Nevada law is the same as under a 42 U.S.C. § 1983 claim.") (citations omitted). "Under Nevada law, police officers 'are privileged to use that amount of force which reasonably appears necessary,' and are liable only to the extent they use more force than reasonably necessary." *Tuuamalemalo v. Greene*, 946 F.3d 471, 478 (9th Cir. 2019) (quoting *Ramirez v. City of Reno*, 925 F. Supp. 681, 691 (D. Nev. 1996)).

---

[12] Additionally, the Defendants are entitled to qualified immunity on the municipal liability claims under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). "In order to withstand summary judgment in a § 1983 claim against a municipal entity, a plaintiff must offer enough evidence to create a genuine issue of material fact as to both the existence of a constitutional violation and municipal responsibility for that violation." *White v. Las Vegas Metro. Police Dep't*, 2021 WL 1109348, at *3–4 (D. Nev. Mar. 22, 2021) (citing *Monell*, 436 U.S. at 690-91). In this case, the Officers did not commit any constitutional violation; therefore, the *Monell* claims fail, and summary judgment must be granted.

In this case, as previously argued, the use of deadly force was reasonable based on the actions of Plaintiff, which can be clearly seen on the videos. Therefore, the "battery claim fails because plaintiffs cannot show that the officers used unreasonable force." *Monzon v. City of Murrieta*, 978 F.3d 1150, 1164 (9th Cir. 2020). Therefore, the amount of force used was reasonable and summary judgment must be granted.

## VIII.     <u>CONCLUSION</u>

The Officers are entitled to qualified immunity as to the excessive force claim for using deadly force against a violent, fleeing felon that was further attempting to flee after hitting multiple police vehicles with his vehicle and eluding officers for approximately 42 minutes. The Officers did not violate a statutory or constitutional right. However, even if the Officers did violate a statutory or constitutional right, unlawfulness of their conduct was not clearly established at the time. Given that the constitutional excessive force claim fails, so do any municipal liability claims. Additionally, the Battery claim fails because Williams cannot show that the officers used unreasonable force.

DATED this 7th day of August, 2023.

WESLEY K. DUNCAN
Sparks City Attorney

By:    /s/ Barrack Potter
BARRACK POTTER
Senior Assistant City Attorney
*Attorneys for Defendants - Appellants*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 23-15465

I am the attorney or self-represented party.

**This brief contains** 9,950 **words, including** 0 **words**

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Barrack Potter                     **Date** 08/07/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*