# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Case No. 23-15465

---

CITY OF SPARKS, CHRISTOPHER BARE, CHRISTOPHER ROWE, MATEO TERRASAS, CHARLES COLBORN, NATHAN JANNING, VERNON TAYLOR and AUSTIN GIBSON,

Defendants – Appellants,

vs.

JOSEPH WILLIAMS,

Plaintiffs – Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA
Case No.: 3:22-CV-00197-MMD-CSD

---

### APPELLANTS' REPLY BRIEF

---

WESLEY K. DUNCAN
City Attorney
Nevada State Bar No.: 12362

MARIAH NORTHINGTON
Senior Assistant City Attorney
Nevada State Bar No.: 14247

P.O. Box 857
Sparks, Nevada 89431
(775) 353-2324
AttyCivilDiv@cityofsparks.us

Attorneys for Defendants'- Appellants

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................. 1

II.    JURISDICTION ................................................................................ 3

III.    ARGUMENT.................................................................................. 6

     A.      This Court should disregard Williams' self-serving affidavit. .. 6

     B.      Williams revved his engine causing his tires to spin, as evidenced by Officer Janning's dash camera footage. ................................. 8

     C.      Roger Clark's opinions are inadmissible and should not be considered.................................................................................... 9

     D.      Williams' version of facts is misleading and unsupported by evidence................................................................................... 11

     E.      The use of force was reasonable as a matter of law because all the *Graham* factors weigh in the officers' favor....................... 12

         1.      Williams was engaging in numerous severe crimes. ...... 13

         2.      Williams posed an immediate threat to the safety of officers and others........................................................ 15

         3.      Williams was actively resisting arrest and/or attempting to evade arrest throughout this entire encounter. ............... 19

         4.      The number of shots fired was reasonable..................... 20

         5.      Force may be reasonable absent a warning. .................. 21

         6.      Officers are not required to use the least intrusive degree of force possible. ....................................................... 22

     F.      Alternatively, the Officers are entitled to qualified immunity because the purported unlawfulness of the officers' conduct was not clearly established. .......................................................... 23

         1.      Williams' case law does not clearly establish that the officers' conduct was unlawful..................................... 23

2. Williams' proffered case law is from this Court, not the Supreme Court. ................................................................ 26

G. The use of the 40mm foam round did not constitute excessive force, and even if it had, the unlawfulness of the conduct was not clearly established at the time. ................................................. 27

IV. CONCLUSION ........................................................................... 27

# TABLE OF AUTHORITIES

## CASES

*Acosta v. City & County of San Francisco*, 83 F.3d 1143 (9th Cir. 1996)....... 23, 24

*Adams v. Speers*, 473 F.3d 989 (9th Cir. 2007)................................................. 23, 24

*Ayala v. Aransas County*, 2018 WL 9802070 (S.D. Tex. June 21, 2018)..............11

*Baker v. City of SeaTac*, 994 F. Supp. 2d 1148 (W.D. Wash. 2014) ......................25

*Billington v. Smith*, 292 F.3d 1177 (9th Cir. 2002) ...............................................9

*Bryan v. McPherson*, 630 F.3d 805 (9th Cir. 2010) ...............................................3

*Carroll v. Carman*, 574 U.S. 13 (2014)................................................................27

*Case v. Kitsap Cnty. Sheriff's Dep't*, 249 F.3d 921 (9th Cir. 2001) ......................21

*Chapman v. Rudd Paint & Varnish Co.*, 409 F.2d 635 (9th Cir. 1969) ..............5, 12

*City & County of San Francisco v. Sheehan*, 575 U.S. 600 (2015) ................. 26, 27

*Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009)...............................................21

*D.C. v. Wesby*, 138 S. Ct. 577 (2018) ............................................................. 25, 26

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) .......................... 10, 11

*Earl v. Campbell*, 859 F. App'x 73 (9th Cir. 2021)................................................18

*Est. of Aguirre v. Riverside County*, 29 F.4th 624 (9th Cir. 2022)...........................4

*Est. of Allen v. City of W. Memphis*, 509 F. App'x 388 (6th Cir. 2012) ...................4

*Est. of Anderson v. Marsh*, 2021 WL 139733 (9th Cir. Jan. 15, 2021)....................5

*Est. of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998 (9th Cir. 2017) .........23

*Est. of Loury by Hudson v. City of Chicago*, 2019 WL 1112260 (N.D. Ill. Mar. 11, 2019) ....................................................................................................................10

*Est. of Martinez v. City of Fed. Way*, 105 F. App'x 897 (9th Cir. 2004).................21

*George v. Morris*, 736 F.3d 829 (9th Cir. 2013) ....................................................6

*Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014)...................................22

*Graham v. Connor*, 490 U.S. 386 (1989) ...............................................................7

*Harris v. Roderick*, 126 F.3d 1189 (9th Cir. 1997) ...............................................22

*Hughes v. Kisela*, 841 F.3d 1081 (9th Cir. 2016) ..................................................23

*Hughes v. Rodriguez*, 31 F.4th 1211 (9th Cir. 2022)...............................................8

*Hulstedt v. City of Scottsdale*, 884 F. Supp. 2d 972 (D. Ariz. 2012)......................21

*Johnson v. United States*, 576 U.S. 591 (2015) .....................................................14

*Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123 (9th Cir. 2017)...............11

*Kisela v. Hughes*, 138 S. Ct. 1148 (2018)....................................................... 25, 27

*Lowry v. City of San Diego*, 858 F.3d 1248 (9th Cir. 2017)........................... 13, 23

*Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992) ...........................................25

*Manley v. Rowley*, 847 F.3d 705 (9th Cir. 2017)....................................................7

*McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451 (9th Cir. 1999)......................10

*Mendez v. City of Scottsdale*, 2014 WL 2569137 (D. Ariz. June 9, 2014) ...............7

*Monzon v. City of Murrieta*, 978 F.3d 1150 (9th Cir. 2020) ...................................18

*Mullenix v. Luna*, 136 S. Ct. 305 (2015)....................................................................17

*Mullenix v. Luna*, 577 U.S. 7 (2015) ................................................................ 25, 26

*O'Doan v. Sanford*, 991 F.3d 1027 (9th Cir. 2021)...................................................4, 26

*Orn v. City of Tacoma*, 949 F.3d 1167 (9th Cir. 2020) ............................. 15, 17, 24

*Plumhoff v. Rickard*, 572 U.S. 765 (2014)........................... 4, 13, 17, 19, 20, 23, 26

*Rice v. City of N. Las Vegas*, 2009 WL 10710042 (D. Nev. Nov. 4, 2009)............11

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021).....................................................26

*Schwenk v. Hartford*, 204 F.3d 1187 (9th Cir. 2000) .................................................4

*Scott v. Harris*, 550 U.S. 372 (2007) ..................................................... 3, 7, 8, 17, 23

*Soderberg v. City of Los Angeles*, 2020 WL 6540511 (C.D. Cal. Sept. 30, 2020) .13

*Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978 (9th Cir. 2007) ...........................7

*Sykes v. United States*, 564 U.S. 1 (2011)................................................................14

*Tennessee v. Garner*, 471 U.S. 1 (1985)..................................................................21

*United States v. City of Tacoma*, 332 F.3d 574 (9th Cir. 2003) ...............................3

*United States v. Decinces*, 808 F.3d 785 (9th Cir. 2015) ..........................................5

*United States v. Garcia- Guizar*, 160 F.3d 511 (9th Cir. 1998) ..........................5, 12

*Villanueva v. California*, 986 F.3d 1158 (9th Cir. 2021) ................................. 15, 24

*Vos v. City of Newport Beach*, 892 F.3d 1024 (9th Cir. 2018)................................13

*Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010)........................... 4, 18, 22, 23, 26

*Williamson v. City of Nat'l City*, 23 F.4th 1146 (9th Cir. 2022) ............................23

## STATUTES

NRS 199.280.................................................................................................................14

NRS 484B.550 .............................................................................................................14

## RULES

Fed. R. Evid. 702 ........................................................................................................11

## I.    <u>INTRODUCTION</u>

At the time of the use of deadly force, the officers knew: Plaintiff-Appellee Williams had just committed larceny and vandalism; he was driving a large, lifted, steel truck; he fled from the first responding officer; he had a criminal history of battery with a deadly weapon and eluding; he drove down the middle of two lanes while another vehicle was on the other side of the road as oncoming traffic; on three separate occasions, Williams stopped his vehicle in the middle of the street as officers caught up to him, paused, and then continued to flee; officers heard what they believed to be either a gunshot or backfire from Williams' vehicle, which was broadcasted to all officers; upon the fourth time Williams stopped his vehicle, he encouraged the officers to approach his vehicle on foot but refused lawful commands to exit his vehicle, then continued to flee by driving through a chain-link fence; Williams ran at least three stop signs, five red lights, avoided an attempted PIT maneuver ("precision immobilization technique") and evaded a subsequent PIT maneuver; Williams drove over the officers' successfully-laid spike strip which punctured his front passenger tire; he drove on the freeway without any lights on; he drove across the freeway and in the wrong direction in front of a semi-truck; officers believed Williams attempted to "ram" Officer Colborn's vehicle, which was broadcasted to all officers; Williams' damaged wheel was emitting sparks as he drove on the freeway; after the successful PIT maneuver was conducted, instead of

applying the brakes, and after eluding officers for approximately 42 minutes, Williams then struck three separate officers' vehicles like bumper cars before being boxed in, including driving *over the hood* of one of the officers' vehicles; and, even after being boxed in by four police vehicles, Williams continued to accelerate his engine, causing a revving sound and spinning of the rear tires as he attempted to continue his dangerous flight.

Appellant-Defendant Officer Janning's dash camera footage very clearly shows the blurring of the white lettering on Williams' rear tire as he accelerates—establishing definitively that Williams posed an imminent threat. ER-057 at 07:56:01Z – 07:57:21Z. The standard to be applied in a Fourth Amendment analysis is that of a reasonably objective officer. Williams' subjective beliefs or intentions, which are discussed at length in his Answering Brief, have no bearing on the reasonableness of the responding officers' actions, and are thus wholly irrelevant to this analysis. Williams' conduct up to the point of the shooting put every involved officer on notice that he was not going to cease his dangerous conduct—conduct which, not by design but merely by chance, did not result in injury or death to other pedestrians or drivers. Williams could have very easily ended this encounter by simply applying the brake. A reasonably objective officer—aware of all of Williams' prior pauses, reacceleration, illegal maneuvers, and evasions—would have stopped Williams' dangerous conduct with deadly force.

## II. JURISDICTION

This Court undoubtedly has interlocutory jurisdiction to consider this matter. A district court's decision on summary judgment and on a denial of qualified immunity is reviewed de novo. *United States v. City of Tacoma*, 332 F.3d 574, 578 (9th Cir. 2003); *Bryan v. McPherson*, 630 F.3d 805, 823 (9th Cir. 2010). Defendants agree that "[a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a '*genuine*' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). Nonetheless the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts" because "the mere existence of some alleged factual dispute between the parties will not defeat … summary judgment…." *Id*. (citation omitted). Here, there is <u>clear video evidence</u> demonstrating Williams' acceleration at the time of the shooting, which <u>the District Court chose not to review</u> and pointedly cited to a different video which was captured from an entirely different angle to reach its faulty decision. *Compare* SER-3 (Defendants' Motion for Summary Judgment) at 6:11 and FER-083 (Defendants' Reply in Support) at 3:21, 9:25 *with* ER-004 (District Court's Order) at p. 7, n. 11.

Therefore, "**[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts ….**" *Id*. (emphasis added);

*see also Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010). The Supreme Court held that videos of the event can speak for themselves. *See Scott*, 550 U.S. at 378 & n.5 ("We are happy to allow the videotape to speak for itself."). Here, because Janning's video speaks for itself, "[i]n the absence of material factual disputes, the objective reasonableness of a police officer's conduct is a pure question of law" and is appealable. *O'Doan v. Sanford*, 991 F.3d 1027, 1035 (9th Cir. 2021) (cleaned up).

Even if Defendants' appellate brief disputes the facts, this Court is **"fully capable of distinguishing between advocacy and the record itself,"** *Est. of Aguirre v. Riverside County*, 29 F.4th 624, 627 (9th Cir. 2022) (emphasis added), and **"is not precluded from reviewing such an order on appeal merely because some of the facts are disputed."** *Schwenk v. Hartford*, 204 F.3d 1187, 1195 (9th Cir. 2000) (emphasis added). "[T]he Sixth Circuit had previously interpreted [] *Scott* … as creating an exception to this rule under which an immediate appeal may be taken to challenge blatantly and demonstrably false factual determinations." *Plumhoff v. Rickard*, 572 U.S. 765, 771 (2014). When, as here, **"the trial court's determination that a fact is subject to reasonable dispute is blatantly and demonstrably false, a court of appeals may say so, even on interlocutory appeal."** *Est. of Allen v. City of W. Memphis*, 509 F. App'x 388, 391 (6th Cir. 2012) (unpublished) (emphasis added), *rev'd and remanded sub nom. Plumhoff*, 572 U.S. 765. This Court may also review claims "that a plaintiff has presented no evidence

such that his arguments … are premised on 'bare allegation[s]'." *Est. of Anderson v. Marsh*, 2021 WL 139733, at \*4 (9th Cir. Jan. 15, 2021) (citation omitted). **Attorney argument is not evidence.** *See Chapman v. Rudd Paint & Varnish Co.*, 409 F.2d 635, 643 (9th Cir. 1969); *United States v. Garcia- Guizar*, 160 F.3d 511, 522 (9th Cir. 1998).

Ultimately, this Court has "jurisdiction to determine [its] jurisdiction." *United States v. Decinces*, 808 F.3d 785, 788 (9th Cir. 2015). Defendants' disputation of certain issues of fact does not preclude interlocutory jurisdiction. Defendants posit two separate grounds for this Court's analysis: (1) this Court can disregard Williams' and the District Court's blatantly contradicted version of facts and make factual findings based on the actual evidence, an exception to the limited interlocutory jurisdiction which has been explicitly recognized by this Court; or alternatively, (2) even taking the version of facts asserted by Williams and adopted by the District Court, the Defendants are nevertheless entitled to qualified immunity because even under those facts, the conduct of the officers was objectively reasonable, or at a minimum, there is no clearly established law to put the officers on notice that their conduct was in violation of the Constitution. Even if the facts adopted by this Court are those adopted by the District Court—that the truck was simply making a mysterious loud noise and there was a cloud of an unknown substance emitting from the truck's rear tires—a reasonable officer could still have believed Williams posed

an imminent threat.  A factual analysis of the officers' conduct is necessary and pertinent for this Court to determine the reasonableness of said conduct or if clearly established law exists for the qualified immunity analysis.

Either analysis is available to this Court, and Defendants are entitled to argue in the alternative.  Either way, this Court has jurisdiction to determine whether the doctrine of qualified immunity was appropriately applied, and may examine the actual evidence, not just the District Court's findings.

Lastly, Williams' argument that Defendants' dispute of Williams' uncorroborated version of facts amounts to a waiver of any arguments presented on appeal, and thus deprives this Court of jurisdiction, is without merit.  Williams' cited cases do not stand for that proposition; rather, those cases simply hold that an issue not raised below is waived on appeal. *See* Ans. Br. at 18 (citing unpublished cases and *George v. Morris*, 736 F.3d 829, 837 (9th Cir. 2013)).  Contextually, the cases Willams relies on are inapposite, and therefore inapplicable here.

## III.    ARGUMENT

### A.    This Court should disregard Williams' self-serving affidavit.

The primary evidentiary item presented by Williams and relied upon by the District Court was Williams' self-serving affidavit, which is blatantly contradicted by the video evidence and merely presents Williams' subjective beliefs which are irrelevant in a Fourth Amendment reasonableness analysis. *See* ER-024; ER-004 at 2:6; 6:10-11; 6, n. 9; 6, n. 10.

6

First, this Court "refuse[s] to find a genuine issue as to a material fact where the only evidence presented is uncorroborated and self-serving testimony." *Manley v. Rowley*, 847 F.3d 705, 710–11 (9th Cir. 2017) (cleaned up); *see also Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.").

Second, Williams' testimony is blatantly contradicted by the evidence and cannot create a genuine dispute of fact. In such circumstances, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record … a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. Courts do not "rel[y] on such visible fiction; it should [view] the facts in the light depicted by the videotape." *Id*. at 380-381. Williams' Affidavit, wherein he claims that he was attempting to avoid the officers and he never *tried* to hit any of them (omitting that he did manage to crash into all three cars around him) is belied by the video evidence.

Third, Williams' subjective intent is a red herring—the sole question presented to this Court is whether *the officers' actions* were objectively reasonable. *Graham v. Connor*, 490 U.S. 386, 397 (1989); *see also Mendez v. City of Scottsdale*, 2014 WL 2569137, at *4 (D. Ariz. June 9, 2014) ("Plaintiff's subjective intention is irrelevant."). Thus, this affidavit should be wholly disregarded.

**B.** **Williams revved his engine causing his tires to spin, as evidenced by Officer Janning's dash camera footage.**

In a summary judgment analysis, videos of the event "speak for itself." *Scott*, 550 U.S. at 378 & n.5. When a district court is presented with blatantly contradictory testimonial evidence, it must rely upon the video footage in rendering a decision; failure to do so constitutes reversible error. *See Hughes v. Rodriguez*, 31 F.4th 1211, 1218 (9th Cir. 2022).

Officer Janning halted Williams' continued flight as he boxed in the rear driver's side of Williams' truck after Williams had crashed into three officers' cars. Janning's dash camera footage plainly depicts the rear tire of Williams' truck as he is being boxed in. The video shows the white lettering on the side of the tire, and then shows those letters begin to blur as the tire spun and the engine revved, before the visibility becomes obscured by the cloud of dust. ER-057 at 07:56:03Z – 07:56:15Z. This exact portion of Janning's dash camera footage (ER-057 at 07:56:01Z – 07:57:21Z) was cited by Defendants multiple times in the underlying summary judgment briefing and was wholly ignored by the District Court. *See* SER-3 (Defendants' Motion for Summary Judgment) at 6:11; FER-083 (Defendants' Reply in Support at 3:21; 9:25). Instead of relying upon the video footage cited to by Defendants—clearly depicting the imminent threat posed by Williams—the District Court relied solely upon a *different* officer's dash camera footage, which was from a different angle and did not show the rear of Williams' truck, where the

tires were spinning.  It was error for the District Court to ignore Janning's footage and rely only on other footage (that was not relied upon by the Defendants and did not depict the tires) to determine that the tires were not spinning. ER-004 at p. 7, n. 11[1]

**C.    Roger Clark's opinions are inadmissible and should not be considered.**

Williams again attempts to rely upon the opinions of his proffered expert, Clark.  However, because the District Court did not consider Clark's opinions in reaching its decision, this Court cannot. *See* ER-004 at 2:6 ("Defendants rely on [call logs and videos] … while Plaintiff offers his declaration as support in response.").

Even if this Court could consider Clark's declaration, a party cannot avoid summary judgment by simply producing an expert report which disagrees with the officer's actions.  *Billington v. Smith*, 292 F.3d 1177, 1189 (9th Cir. 2002), *abrogated on other grounds by County of Los Angeles v. Mendez*, 581 U.S. 420 (2017).  That is a matter of law to be determined by the Court, not Williams' proffered expert. *Id*.

---

[1] The District Court also confusingly and erroneously found that the noise and cloud coming from Williams' vehicle was "perhaps due to … a malfunctioning engine." ER-004 at p. 7, n. 11.  This finding is pure speculation, was not an argument raised by either party, and is nonsensical, given that the truck had just engaged in a 42-minute pursuit and continued driving (and crashing into three officers) after the successful PIT maneuver.

In any event, Clark's declaration is inadmissible and should not be considered, as it fails to meet the *Daubert* standard. "A witness who is qualified as an expert … may testify in the form of an opinion or otherwise if" the expert has specialized knowledge that could help the trier of fact understand evidence. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993). An expert witness cannot give an opinion as to a legal conclusion, *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999), nor can an expert's opinion be based upon "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

Clark's declaration does not provide expert analysis, it provides his opinion as to what the video footage showed and what he thinks the officers should have done, without any knowledge of their training. *See* SER-31. Other courts have explicitly denigrated Clark's inappropriate credibility determinations and intrusion into the role of the factfinder, further demonstrating the irrelevance of his testimony here. *See Est. of Loury by Hudson v. City of Chicago*, 2019 WL 1112260, at *4 (N.D. Ill. Mar. 11, 2019) ("Clark does not add his own opinion, but rather seeks to draw his own factual conclusions …."); *Williams v. City of Houston, Texas*, 2019 WL 2435854, at *6 (S.D. Tex. June 11, 2019) ("Clark also opines about what the videotapes show, which is information within a factfinder's lay knowledge and does not require specialized knowledge, training, or education…," rendering his opinions "inadmissible" ). Here, as in those cases, "Clark's testimony fails a *Daubert* review

10

because he is a hired gun, willing to proffer testimony on any issue requested of him." *Ayala v. Aransas County*, 2018 WL 9802070, at *3 (S.D. Tex. June 21, 2018). The District of Nevada itself previously declared "[Clark is] not a legal expert … [b]ut even if Clark were a legal expert, each courtroom comes equipped with a legal expert, called a judge." *Rice v. City of N. Las Vegas*, 2009 WL 10710042, at *4 (D. Nev. Nov. 4, 2009).

Clark's opinions as to his own synopsis of what he believed occurred and his speculations are an improper attempt to usurp the role of the factfinder, and thus his opinions would not assist the factfinder as required by Fed. R. Evid. 702 and *Daubert*. The District Court did not consider Clark's inadmissible speculative opinions, and this Court should also decline to consider them.

### D. Williams' version of facts is misleading and unsupported by evidence.

Williams' factual recitation is an attempt to downplay and minimize his dangerous conduct during this vehicle pursuit. Although Williams tries to limit this Court's analysis to a 17 second portion of the 42-minute encounter, when evaluating the *Graham* factors, courts must "examine the totality of the circumstances" *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1130 (9th Cir. 2017). Many of Williams' asserted "facts" are conclusory, speculative, and are based upon Williams' self-serving affidavit—these uncorroborated "facts" should be wholly disregarded. Williams even asserts "facts" that are demonstrably false; for example: Williams

asserts he was "otherwise unarmed," and yet a Smith & Wesson .40 caliber pistol was on the floorboard of his truck. FER-003 at p. 38.

Williams does not simply want this Court to view the facts in the light most favorable to him, he wishes the Court to *omit* facts unfavorable to him, which is not the standard. To defeat summary judgment, the adverse party must rely upon actual evidence, not mere allegations or arguments by an attorney. *Chapman*, 409 F.2d at 643; *Garcia- Guizar*, 160 F.3d at 522. Defendants' recitation of the chase does not omit a single ignored stop sign, stop light, or command from the pursuing officers, or Williams driving the wrong way on the freeway at night with no lights on, or crashing into three separate police vehicles. Conversely, Williams' statement of facts conveniently omits all of Williams' dangerous, illegal activities, preferring to focus on the fact that Williams performed all those evasive maneuvers while miraculously not killing anyone. Simply because Williams was able to avoid harming anyone during this 42-minute vehicle pursuit, does not mean his conduct was not dangerous and reckless. Williams' statement of facts is, at best, misleading.

### E. The use of force was reasonable as a matter of law because all the *Graham* factors weigh in the officers' favor.

The factors that are considered when deciding if there was excessive force are: "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Lowry v. City*

*of San Diego*, 858 F.3d 1248 (9th Cir. 2017). Here, the facts demonstrate that the officers were objectively reasonable in perceiving an imminent threat from Williams' conduct during the preceding 42 minutes and ongoing attempt to continue evading arrest by attempting to accelerate his truck toward or near officers after he had been boxed in.

      1.     <u>Williams was engaging in numerous severe crimes.</u>

Williams attempts to argue that this analysis only relates to the initial crime reported, and cites to *Vos v. City of Newport Beach*, 892 F.3d 1024 (9th Cir. 2018) and *Soderberg v. City of Los Angeles*, 2020 WL 6540511 (C.D. Cal. Sept. 30, 2020) (unreported), neither of which support Williams' claim. In *Soderberg*, an unreported California district court case, the court actually held that the suspect was no longer engaging in criminal activity when the police arrived, and therefore this case is entirely inapplicable to Williams' assertion. *Vos* is similarly inapplicable to this case, as the *Vos* Court determined that the initial call for service did not involve a reported crime. Unlike *Soderberg* and *Vos*, Williams was involved in a crime and then continued to commit escalating crimes while he attempted to evade arrest. *See* Op. Br. at 5-13. Neither case stands for the proposition that the Court may only consider the initial crime, and the Supreme Court explicitly considered subsequent criminal conduct in the *Graham* analysis (*see Plumhoff*, 572 U.S. at 768), clearly invalidating Williams' attempt to narrow this Court's analysis.

This Court must evaluate the totality of the circumstances and Williams cannot limit the Court's authority. This Court must consider the initial reported crimes and all the crimes Williams committed during this extensive pursuit, including but not limited to felony eluding pursuant to NRS 484B.550 and resisting an officer with a dangerous weapon pursuant to NRS 199.280.

"Confrontation with police is the expected result of vehicle flight…It places property and persons at serious risk of injury." *Sykes v. United States*, 564 U.S. 1, 16 (2011) (overruling Ninth Circuit finding that evading arrest was not a crime of violence), *overruled on other grounds Johnson v. United States*, 576 U.S. 591 (2015). In *Sykes*, the Supreme Court stated:

> Risk of violence is inherent to vehicle flight. Between the confrontations that initiate and terminate the incident, the intervening pursuit creates high risks of crashes … It is well known that when offenders use motor vehicles as their means of escape they create serious potential risks of physical injury to others. Flight from a law enforcement officer invites, even demands, pursuit. As that pursuit continues, the risk of an accident accumulates. And having chosen to flee, and thereby commit a crime, the perpetrator has all the more reason to seek to avoid capture.

> Unlike burglaries, vehicle flights from an officer by definitional necessity occur when police are present, are flights in defiance of their instructions, and are effected with a vehicle that can be used in a way to cause serious potential risk of physical injury to another.

*Id*. Justice Thomas recognized "vehicular flight … always triggers a dangerous confrontation[.]" *Johnson*, 576 U.S. at 609 (Thomas, J., concurring in judgment).

Here, Williams was engaging in vehicular flight and committing various dangerous crimes and creating a situation with an inherent risk of violence.

2.    <u>Williams posed an immediate threat to the safety of officers and others.</u>

While this Court has "consistently found use of deadly force to stop a slow-moving vehicle unreasonable when the officers could have easily stepped out of the vehicle's path to avoid danger," *Villanueva v. California*, 986 F.3d 1158, 1170 (9th Cir. 2021), other factors can render such force reasonable.  This Court *has* **"found use of deadly force against a stopped or slow-moving vehicle reasonable only when the driver was trying to evade arrest in an aggressive manner involving attempted or actual acceleration of the vehicle**." *Id*. (emphasis added).  In such situations, "to warrant the use of deadly force**, a motorist's prior interactions with police must have demonstrated that he either was willing to injure an officer that got in the way of escape or was willing to persist in extremely reckless behavior that threatened the lives of all those around**." *Orn v. City of Tacoma*, 949 F.3d 1167, 1177 (9th Cir. 2020) (cleaned up) (emphasis added).

In this case, Williams demonstrated with his actions for 42 minutes that he was actively trying to evade arrest in an aggressive manner, and he was willing to persist in reckless behavior to evade law enforcement.  This conduct includes feigning compliance by stopping in the middle of the street only to take off again as soon as officers caught up on four separate occasions, running at least three stop

signs and five red lights, eluding multiple PIT maneuvers, attempting to ram into Officer Colborn's vehicle, driving on the freeway with no lights on (at one point driving wrong way), emitting sparks from a severely damaged tire, striking three officers' vehicles after a successful PIT including driving up over the hood of one of the officers' vehicles and then continuing to accelerate and elude. Shockingly, Williams continued to rev his engine and spin his tires for almost a minute after officers shot at the evading vehicle. *See* Op. Br. at 5-13.

At the time Williams was boxed in and his tires were spinning as he attempted to accelerate, he could have very easily gained traction and driven over the police vehicles, as evidenced by the fact that *he had already driven over the hood of one of them*. Or, alternatively, at the time Williams was boxed in and his engine was making a "mysterious" loud noise and there was a cloud of dust being kicked up for an "unknown reason" (the facts posited by Williams), a reasonable officer could have *reasonably believed* that Williams was still attempting to accelerate, and he could have easily gained traction at any second—thereby rendering the officers' conduct reasonable.

Williams' contention that the officers here were unreasonable by relying on *Orn* is misplaced. In *Orn*, the suspect engaged in a vehicle pursuit that lasted 15 minutes as he drove home, during which he drove 25-35 miles per hour ("normal speeds") and—unlike here—stopped at traffic lights and stop signs. *Orn*, 949 F.3d

at 1172.  The Court therefore characterized this is a "slow-speed pursuit." *Id*.  Unlike here, there was never any issue of oncoming traffic. *Id*.  As Orn attempted to maneuver around the police vehicle blockade, he "clipped" the passenger-side rear quarter panel of a police vehicle; it was deemed a "glancing blow." *Id*. at 1173.  Video footage here depicts Williams crashing into three vehicles, one after the other.  ER-057 at 07:56:01Z – 07:56:15Z.  Further, the officer in *Orn* did not witness and was not informed about most of the driving pattern or any facts that indicated a dangerous driving pattern, and the Fourth Amendment legal standard requires an analysis from what the officer actually knew. *Id*. at 1177.  Here, all of Williams' criminal conduct was broadcasted to all officers in this case.  This case is more like the distinguishable cases the Court in *Orn* cataloged—*Mullenix v. Luna*, 136 S. Ct. 305 (2015), *Plumhoff*, 572 U.S. at 776, and *Scott*, 550 U.S. at 380— where "officers have an interest in terminating the suspect's flight because *the flight itself poses a threat of serious physical harm to others*." *Id*. at 1176–77 (emphasis added).  Here, Williams was not going to stop fleeing; his prior conduct established that.  Despite multiple attempts by the officers to get him to stop, Williams was still actively and recklessly eluding law enforcement, unlike the plaintiff in *Orn*. *See* Op. Br. at 5-13.

Conversely, in *Wilkinson*, the Court found deadly force was reasonable where "[t]he situation had quickly turned from one involving a crashed vehicle to one in which the driver of a moving vehicle, ignoring police commands, attempted to

accelerate within close quarters of two officers on foot," and held "[i]n this 'tense, uncertain, and rapidly evolving' situation, a reasonable officer had probable cause to believe that the threat to safety justified the use of deadly force." *Wilkinson*, 610 F.3d at 551 (citation omitted). "The critical inquiry is what [the officer(s)] perceived." *Id*. at 551. Just like the officer in *Wilkinson* "could hear the engine revving and the wheels spinning," so could the officers in this case; and just like the situation in *Wilkinson*, "[a]lthough the vehicle was moving at a slow rate of speed because of the slippage, it could have gained traction at any time, resulting in a sudden acceleration in speed," Williams' truck could also have gained traction at any time. *Id*. at 552; *see also Monzon v. City of Murrieta*, 978 F.3d 1150, 1158 (9th Cir. 2020) (recognizing vehicle pursuits are "dynamic and chaotic" situations, and finding the officers acted reasonably in a high speed pursuit where the vehicle refused to stop, ignored commands, and drove the vehicle near, toward, and amongst officers); *Earl v. Campbell*, 859 F. App'x 73, 74 (9th Cir. 2021) (even a slow-moving car not pointed directly at an officer can pose a threat justifying deadly force).

This case is most like *Plumhoff*, where the Supreme Court held that the officer's conduct was reasonable in light of the dangerous pursuit and the plaintiff's clear attempts to escape in a manner that could injure the officers. In *Plumhoff*, officers contacted the suspect due to an inoperable headlight, which resulted in the suspect leading the officers on a pursuit. During that pursuit, the suspect avoided a

rolling roadblock, exited the freeway, and collided with two police vehicles, where his "tires started spinning, and his car 'was rocking back and forth,' …. indicating that Rickard was using the accelerator even though his bumper was flush against a police cruiser." *Plumhoff*, 572 U.S. at 776. There was less than three seconds between the time the vehicle stopped and began accelerating again, which is when the officers opened fire. *Id*. The Court found the officers acted reasonably, relying heavily on the fact that the chase leading up to the use of deadly force "lasted over five minutes." *Id*.

Furthermore, the fact that these officers, who were positioned around Williams' vehicle at various vantage points—including Gibson who was standing on foot at the front of Williams' vehicle—all fired their firearms simultaneously highlights the objective reasonableness of the officers' conduct. Thus, Williams' absolutely posed an immediate threat at the time of the shooting.

3.  <u>Williams was actively resisting arrest and/or attempting to evade arrest throughout this entire encounter.</u>

Williams asserts he was not fleeing or resisting when the deadly force was utilized because the vehicle was incapacitated. However, again, the analysis is not what Williams subjectively believed, it is what *a reasonable officer* on scene would have believed. If a reasonable officer had believed that the suspect was actively resisting or attempting to evade arrest, then this factor weighs in the officers' favor. At the time of the use of deadly force in this case, <u>it is undisputed that the officers</u>

<u>knew</u> that Williams had a criminal history of eluding, had eluded for 42 minutes, refused to comply with verbal commands, his engine was making a loud noise, there was a cloud emitting from the rear of Williams' vehicle, and he had already driven over the hood of one the officers' vehicles to evade and resist. Williams had definitively established via his actions that he was a flight risk. Any reasonable officer would believe Williams was continuing the exact same conduct of the past 42 minutes—evading arrest.

    4.    <u>The number of shots fired was reasonable.</u>

Williams asserts that the number and duration of the shots was unreasonable—this is an incorrect statement of law. "If police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended." *Plumhoff*, 572 U.S. at 777 (rejecting the argument that the firing of 15 shots over a 10-second span was unreasonable and applying qualified immunity); *see also Gonzales v. City of Antioch*, 697 F. App'x 900 (9th Cir. 2017) (unpublished) (the officers acted reasonably when they fired 50 to 52 shots at the suspect). Williams' attempt to rely upon contrary precedent fails, *see* Ans. Br. at 34, given that the caselaw he cited solely evaluates cases where there was a secondary round of shots —wholly inapplicable in this case as there was no second volley of shots.

Williams also asserts that officers are trained that they must justify every shot

fired—however, any purported violation of training does not and cannot constitute a constitutional violation. *Case v. Kitsap Cnty. Sheriff's Dep't*, 249 F.3d 921, 929 (9th Cir. 2001); *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009).

5.      Force may be reasonable absent a warning.

If a "suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, **where feasible**, some warning has been given." *Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985) (emphasis added). "Verbal warnings are not feasible when lives are in immediate danger and every second matters." *Hulstedt v. City of Scottsdale*, 884 F. Supp. 2d 972, 998 (D. Ariz. 2012) (citing *Est. of Martinez v. City of Fed. Way*, 105 F. App'x 897, 899 (9th Cir. 2004).

In this case, warnings were not feasible. Williams had engaged in a 42-minute vehicle pursuit wherein he played a game of cat and mouse four separate times, urging the officers to dangerously approach his truck while he failed to comply with commands. Williams was perceived to have attempted to ram Officer Colborn and had crashed into three other officers, his vehicle was boxed in and yet the engine was making a loud noise and dirt and rocks were flying everywhere. The tires on Williams' truck "could have gained traction at any time, resulting in a sudden acceleration in speed" and caused severe harm to the officers or others. *Wilkinson*,

21

610 F.3d at 552.  Given the immediate danger, warnings were not feasible. Additionally, the noise of the revving engine alone, which Williams concedes was present at the scene, made warnings infeasible.

Further, "[t]he absence of a warning does not necessarily mean that [the] use of deadly force was unreasonable." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 797 (9th Cir. 2014) (citation omitted). The purpose of the warning requirement is "so that the suspect may end his resistance or terminate his flight." *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997).  Williams was given ample opportunity to end his resistance and flight, and failed to do so.

6. <u>Officers are not required to use the least intrusive degree of force possible.</u>

Williams argues the officers failed to attempt to use other feasible means besides deadly force, including remaining in their vehicles, pleading with him to end his flight, and taking "additional cover" to evade his vehicle. *See* Ans. Br. at 36. That is a ridiculous proposition.  The officers in this case properly utilized multiple and varied tools in an effort to stop Williams from his reckless and criminal conduct—lights and sirens, verbal commands, PIT maneuvers, a spike strip, and more.  The officers had tried for 42 minutes to get Williams to stop, and it clearly did not work.  Additionally, the officers attempted the very alternative means posited by Williams now—on four separate occasions, Williams stopped his vehicle and the officers waited, only for Williams to speed off once again.

Most importantly, Williams' request is not a legal requirement. "It is also well-established that police officers are not required to use the least intrusive degree of force possible." *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022) (cleaned up); *see also Est. of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998, 1006 (9th Cir. 2017); *Lowry*, 858 F.3d at 1259; *Hughes v. Kisela*, 841 F.3d 1081, 1085 (9th Cir. 2016).

**F. Alternatively, the Officers are entitled to qualified immunity because the purported unlawfulness of the officers' conduct was not clearly established.**

1. <u>Williams' case law does not clearly establish that the officers' conduct was unlawful.</u>

The precedent of *Acosta v. City & County of San Francisco*, 83 F.3d 1143 (9th Cir. 1996) (upholding finding of excessive force), *Adams v. Speers*, 473 F.3d 989 (9th Cir. 2007) (denial of qualified immunity); *Scott*, 550 U.S. 372 (officer acted reasonably); *Wilkinson*, 610 F.3d at 551 (9th Cir. 2010) (use of force was reasonable); *Plumhoff*, 572 U.S. at 771 (2014) (use of force was reasonable); *Orn*, 949 F.3d 1167 (denial of qualified immunity), and *Villanueva*, 986 F.3d 1158 (officers' conduct was unreasonable), together establish that there is no clearly established case law putting every reasonable officer on notice that the conduct in this case would violate Williams' constitutional rights. These cases involve a vehicle pursuit with varying types of traffic violations and with varying court opinions as to the reasonableness of the officer's conduct.

However, the cases wherein the officer's conduct was found unreasonable are inapposite to the present case. *Villanueva* involved a pursuit wherein officers only intermittently used their lights and sirens and the suspects were 15 to 20 feet away, conducting a controlled three-point turn, when the officers opened fire, and the suspect did not crash into anyone. *Villanueva*, 986 F.3d at 1171. *Orn* involved a 15-minute slow speed chase at 25-35 miles per hour wherein the driver obeyed stop signs and red lights and caused a "glancing blow" with an officer's vehicle. *Orn*, 949 F.3d at 1172-73. *Adams* involved a suspect who was driving within the speed limit, either stopping at or rolling slowly through stop signs, and an officer who "abandon[ed] his assignment, pick[ed] up a buddy for no apparent reason except the excitement of the chase, barg[ed] in ahead of the police already engaged in pursuit, once attempting to use force against Alan and twice doing so, creating each time a serious hazard for himself as well as Alan, and finally stepp[ed] out of his patrol car and, without warning and without the need to defend himself or the other officers, killing Alan." *Adams*, 473 F.3d at 991–92. *Acosta* involved an off-duty, plainclothes officer who chased a suspect on foot who got into a waiting stopped car and the officer placed himself in front of the stopped car and, as the car started rolling, the officer shot and fired into the car. *Acosta*, 83 F.3d at 1144.

None of these fact patterns are sufficient to deny qualified immunity. In this case, Williams knowingly fled from officers for 42 minutes, varying between high-

speed and slow-speed, committed countless traffic infractions, almost collided with officers, drove on the freeway at night with no lights on, at one point drove the wrong way on the freeway, collided with three separate officers, drove over the hood of one of the officers' vehicles, baited them into exiting their vehicles before fleeing again, and more.

Application of any of these cases to deny qualified immunity would constitute the exact high level of generality and gray areas that qualified immunity is intended to protect. "This Court has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (cleaned up). The qualified immunity analysis "requires a high degree of specificity." *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (cleaned up). "Qualified immunity protects actions in the hazy border between excessive and acceptable force." *Mullenix v. Luna*, 577 U.S. 7, 18 (2015) (cleaned up). The qualified immunity analysis "is inherently a fact-specific inquiry, not susceptible to bright lines." *Id.* at 22 (Sotomayor, J., dissenting). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Baker v. City of SeaTac*, 994 F. Supp. 2d 1148, 1167 (W.D. Wash. 2014) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. In other words, existing

precedent must have placed the statutory or constitutional question beyond debate." *O'Doan*, 991 F.3d at 1036 (citation omitted). "Without that 'fair notice,' an officer is entitled to qualified immunity." *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 616 (2015) (citation omitted). **"The Court has thus never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity."** *Mullenix*, 577 at 15 (2015) (emphasis added).

The case law relied upon by Williams above does not place this question beyond debate or create sufficiently clear lines on how officers are required to handle vehicle pursuits. As argued above, the cases of *Wilkinson* and *Plumhoff* are more on point than any of the others, warranting a finding of reasonableness as a matter of law, or at the very least, qualified immunity.

2.      Williams' proffered case law is from this Court, not the Supreme Court.

Arguably, Defendants can only be held to legal principles set forth by the Supreme Court, or a robust consensus of circuit court cases, neither of which are present in this analysis. *Wesby*, 138 S. Ct. at 589–90 (cleaned up). Thus, the precedent provided by Williams in this case cannot be the basis for denial of qualified immunity. *See Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) ("Neither [plaintiff] nor the Court of Appeals identified any Supreme Court case that addresses facts like the ones at issue here. Instead, the Court of Appeals relied solely on its

precedent in *LaLonde*. Even assuming that Circuit precedent can clearly establish law for purposes of § 1983, *LaLonde* is materially distinguishable…."); *Sheehan*, 575 U.S. at 614 ("even if 'a controlling circuit precedent could constitute clearly established federal law in these circumstances' … it does not do so here.") (citation omitted)); *Carroll v. Carman*, 574 U.S. 13, 17 (2014) ("Assuming for the sake of argument that a controlling circuit precedent could constitute clearly established federal law in these circumstances…."); *Kisela*, 138 S. Ct. at 1153.

 G.    **The use of the 40mm foam round did not constitute excessive force, and even if it had, the unlawfulness of the conduct was not clearly established at the time.**

Williams argues the officers' use of 40mm foam rounds, utilized to create an opening for Williams to exit the vehicle after he finally stopped attempting to flee, was excessive because the foam round struck him. However, there has been no evidence presented that Williams was actually struck by a foam round.

## IV.    CONCLUSION

The officers are entitled to qualified immunity as to the excessive force claim because the officers did not violate a statutory or constitutional right; however, even if the officers did, any purported unlawfulness of their conduct was not clearly established at the time. Given that the constitutional excessive force claim fails, as does any *Monell* claim and battery claim.

DATED this 27th day of December, 2023.

WESLEY K. DUNCAN

27

Sparks City Attorney

By:  /s/ Mariah Northington
MARIAH NORTHINGTON
Senior Assistant City Attorney
*Attorneys for Defendants - Appellants*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 23-15465

I am the attorney or self-represented party.

**This brief contains** | 6,969 | **words, including** | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [ ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Mariah Northington | **Date** | 12/27/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*